560 P.2d 541

**GENERAL ATOMIC COMPANY, a partnership composed of Gulf Oil Corporation and Scallop Nuclear, Inc., Petitioner,**

v.

**The Honorable Edwin L. FELTER, District Court Judge for the First Judicial District, Santa Fe County, New Mexico, Respondent.**

No. 10870.

Supreme Court of New Mexico.

Feb. 21, 1977.

Rodey, Dickason, Sloan, Akin & Robb, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, Cravath, Swaine & Moore, New York City, Wilmer, Cutler & Pickering, Washington, D. C., for petitioner.

Bigbee, Stephenson, Carpenter & Crout, Santa Fe, for real party in interest.

## OPINION

McMANUS, Justice.

General Atomic Company (GAC) applied to this Court for a writ of prohibition directed to the First Judicial District Court of New Mexico. That court had issued the following injunction:

IT IS THEREFORE ORDERED that General Atomic Company, its partners, privies, agents, servants and employees, are hereby preliminarily enjoined and prohibited from filing or prosecuting any other action or actions against United Nuclear Corporation in any other forum relating to any rights, claims or the subject matter of this action. This injunction prohibits the institution or prosecution of ordinary litigation, third party proceedings, cross-claims, arbitration proceedings or any other method or manner of instituting or prosecuting actions, claims or demands relating to the subject matter of this lawsuit, or including United Nuclear Corporation as a party thereto. However, the case of *Gulf Oil Corporation v. United Nuclear Corporation,* Civil Cause No. 76–032–B, currently pending in the United States District Court for the District of New Mexico, is excepted from the operation of this preliminary injunction, as is the appeal currently pending before the Tenth Circuit Court of Appeals in *General Atomic Co. v. Duke Power Company, et al.,* No. 76–1152. The injunction herein against defendant shall bind Plaintiff to the same terms.

This Court granted an alternative writ on April 19, 1976 to consider the claims raised by GAC. After briefing and oral argument from counsel for GAC and United Nuclear Corporation (UNC) we quashed this writ as being improvidently granted on June 16, 1976. GAC then appealed this order to the United States Supreme Court. The United States Supreme Court, on December 28, 1976, issued its mandate with the following quoted directions to this Court:

ON CONSIDERATION WHEREOF, it was ordered and adjudged on November 29, 1976, by this Court that the judgment of the Supreme Court of New Mexico in this cause be vacated, and that this cause be remanded to the Supreme Court of the State of New Mexico to consider whether the judgment is based on federal or state grounds, or both. See *California v. Krivda,* 409 U.S. 33 [93 S.Ct. 32, 34 L.Ed.2d 45] (1972).

Pursuant to the mandate of that Court, we set forth below the reasons for our actions in this matter.

UNC is in the business of mining and milling uranium. Approximately ten years ago UNC started manufacturing reload fuel and assemblies for nuclear reactors. It entered into a joint corporation, Gulf United Nuclear Fuels Corporation, with Gulf Oil Corporation (Gulf) in order to obtain additional capital. Gulf purchased UNC's interest in the joint corporation in 1973 and thereby acquired contracts to supply uranium to various power companies in the country. Gulf later entered into a partnership agreement with Scallop Nuclear, Inc. (Scallop) and formed the present General Atomic Company (GAC). Gulf assigned to GAC the utility supply agreements.

From 1967 to mid-1973 the market price of uranium was relatively stable at about $7.00 per pound and the utility supply contracts were based upon that figure. Since 1973 the market price of uranium has increased to approximately $40.00 per pound. The value of the uranium in dispute is considerable in the eyes of everyone concerned.

UNC stopped delivery of the uranium in 1975 and filed a declaratory judgment action on August 8, 1975 against GAC and its constituent partners seeking to avoid its obligation under the contract. Gulf removed the case to the United States District Court for the District of New Mexico; UNC took a voluntary nonsuit and filed again in state court naming only GAC as defendant.

UNC applied for a temporary restraining order on January 19, 1976 in the District Court of Santa Fe County, New Mexico, to prevent GAC from instituting any additional suits against UNC. This motion was denied. GAC filed a statutory interpleader in the United States District Court for the District of New Mexico on the same day naming UNC and four utility companies as defendants. On January 20, 1976 Gulf filed a suit in the same federal court against UNC on the same issue. (This suit was subsequently dismissed on a motion by UNC; the court declined to take jurisdiction because the issues could all be resolved in the state court proceeding.) Indiana & Michigan Electric Company (I & M) (one of the utility companies) filed suit in the United States District Court for the Southern District of New York against GAC and its partners on February 24, 1976. Duke Power Company (another utility) filed a demand on February 17, 1976 for arbitration proceedings against GAC on another uranium supply contract. On March 15, 1976 UNC again applied for a temporary restraining order and a preliminary injunction in the District Court of Santa Fe County, New Mexico after learning that GAC would try to bring UNC into the I & M suit and the Duke arbitration case and any other suit involving the utilities. After a hearing, the District Court granted the preliminary injunction restraining GAC, its partners, privies, agents, servants and employees from instituting any further legal action against UNC. The injunction was also applied to UNC. The District Court specifically ex-

cepted the federal action already proceeding[1] and the federal suit on appeal to the United States Court of Appeals for the Tenth Circuit.[2]

 New Mexico Const. art. 6, § 3 grants to this Supreme Court the power to issue writs of mandamus, error, prohibition, habeas corpus and "all other writs necessary or proper for the complete exercise of its jurisdiction . . . ." Prohibition is an extraordinary remedy which is granted only in limited circumstances at the discretion of the Court and is properly invoked to prevent an inferior court from acting either without jurisdiction or in excess of its jurisdiction. *State ex rel. Harvey v. Medler, District Judge,* 19 N.M. 252, 142 P. 376 (1914); *Cal-M, Inc. v. McManus,* 73 N.M. 91, 385 P.2d 954 (1963); *State v. Tackett,* 68 N.M. 318, 361 P.2d 724 (1961); *State v. Carmody,* 53 N.M. 367, 208 P.2d 1073 (1949). This writ should be issued sparingly and only where irreparable harm, extraordinary hardship, costly delays, or unusual burdens of expense would result. *State v. Scarborough,* 75 N.M. 702, 410 P.2d 732 (1966); *Montoya v. McManus,* 68 N.M. 381, 362 P.2d 771 (1961). Prohibition, however, is not a substitute for an appeal nor can it be used merely to correct an erroneous decision of the district court. *Baca v. Burks,* 81 N.M. 376, 467 P.2d 392 (1970); *State v. Coors,* 52 N.M. 189, 194 P.2d 678 (1948). Therefore, in order to determine whether a writ of prohibition is appropriate, we must consider whether issuing the injunction was within the jurisdiction of the district court.

 It is well settled that once a court has acquired jurisdiction over the parties and the subject matter, it may enjoin either party from instituting or proceeding with another action in the same state or in a sister state based upon the same facts and issues. *Cole v. Cunningham,* 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890). This principle rests upon the court's inherent equity power to prevent injustice. *Balti-*

---

1. *Gulf Oil Corporation v. United Nuclear Corporation* (D.N.M. No. 76 032-B).

2. *General Atomic Company v. Duke Power Company, et al.,* (D.N.M. No. 76 029 B); (10th Cir. No. 76-1152).

*more & Ohio R. Co. v. Kepner,* 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941). Most courts are reluctant to resort to such measures in the interest of comity, because even though the injunction acts in personam it operates to interfere with the exercise of jurisdiction of the neighboring court. *James v. Grand Trunk Western Railroad Company,* 14 Ill.2d 356, 152 N.E.2d 858, cert. denied, 358 U.S. 915, 79 S.Ct. 288, 3 L.Ed.2d 239 (1958). For that reason an injunction will not issue to prevent mere inconvenience or hardship, but rather is to be used when serious and grave reasons are present. *Southern Pac. Co. v. Baum,* 39 N.M. 22, 38 P.2d 1106 (1934). The prevention of vexatious, harassing and oppressive suits has been generally recognized as an appropriate basis for invoking this remedy. *Allstate Insurance Company v. Hill,* 218 Ga. 430, 128 S.E.2d 321 (1962); *Boston & M. R. R. v. Whitehead,* 307 Mass. 106, 29 N.E.2d 916 (1940); *Poole v. Mississippi Publishers Corporation,* 208 Miss. 364, 44 So.2d 467 (1950); *John Hancock Mut. Life Ins. Co. v. Fiorilla,* 83 N.J. Super. 151, 199 A.2d 65 (1964).

As the injunction applies to the institution of suits in other state courts, it was clearly within the power of the district court to restrain the parties from so acting. The Court found that further litigation was contemplated by GAC, irreparable injury would occur, there was no adequate remedy at law, further proceedings would be vexatious, harassing and multiplicitous, and that the inconvenience and expense of further proceedings would be reduced by granting the preliminary injunction. These findings give ample support for the court's order.

The thrust of GAC's challenge however, goes mainly to that portion of the injunction which restrains it from instituting further suits in federal court. GAC relies on *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) for the proposition that a state court is absolutely prohibited from interfering with the right of a party to bring multiple actions designed to harass and oppress its opponent so long as the party resorts to the federal forum. As a matter of state law, we hold

that, under these circumstances, a district court has inherent equity powers to order such a restraint. We do not think that *Donovan* is applicable where a party is currently proceeding in federal court and where any further federal action would be based upon the same issues and events for the purpose of harassment. We do not believe that *Donovan* removes all equity powers from the jurisdiction of state courts whenever a party resorts to a federal forum.

In *Donovan v. Dallas* the plaintiffs had instituted a state court proceeding challenging the issuance and selling of municipal bonds for the expansion of a municipal airport. The case was tried and judgment was rendered for the city and upheld on appeal. The plaintiffs then filed an action in federal court seeking the same relief. The city then obtained an injunction prohibiting the plaintiffs from continuing with the federal court action. Donovan and other plaintiffs appealed the dismissal of the federal suit and were convicted of contempt for violating the injunction. Upon review the United States Supreme Court stated the issue as follows:

> The question presented here is whether a state court can validly enjoin a person from prosecuting an action *in personam* in a district or appellate court of the United States which has jurisdiction both of the parties and of the subject matter. Supra at 408, 84 S.Ct. at 1580.

The Court then proceeded to answer this question in the negative. The bases for the decision were (1) the historical rule that state and federal courts would not interfere or try to restrain each other's proceedings, (2) that the petitioners had a right to bring such a suit in federal court and have that court decide the propriety of the state court's judgment and (3) that once jurisdiction has attached no other court may interfere with its exercise even though an in personam order was directed against the party.

The issue considered in Donovan is not present in the instant case and the rationale for that decision is inapplicable to the facts

before the district court. The injunction which was issued does not directly or indirectly affect any proceeding in the district court or appellate courts of the United States where jurisdiction has attached. Those suits which were pending in federal court were exempted from the terms of the injunction. The injunction is directed only towards the institution of future litigation wherein no federal or state court has yet to acquire jurisdiction.

GAC contends that this is a distinction without a difference but when the rationale behind the decision is applied to these facts we find that the district court did not run afoul of the dictates of Donovan. The injunction does not offend any interest of comity; the parties are not restrained from proceeding with the suits wherein the foreign court has exercised its jurisdiction. The district court carefully defined the parameters of the injunction to avoid such a conflict.

Donovan was also concerned with denying the petitioners access to the federal forum. Here no such right is being infringed. GAC has its case before two United States Courts—one district court and one appellate. GAC can raise any issue that is being litigated in the state court, and the federal court may hear all the questions on the merits; it is not limited to first considering whether the state decision is valid and the application of res judicata because no judgment has yet been rendered in the New Mexico district court. This right the Donovan Court tried to protect and the injunction here is not contrary to the Donovan holding.

The underlying issue before us is whether the district court may restrict the future acts of a party who is bringing vexatious and oppressive litigation in multiple jurisdictions for the purpose of harassment. Clearly, the party may be restrained from instituting future state actions; *University of Texas v. Morris,* 162 Tex. 60, 344 S.W.2d 426 (1961), and (before Donovan) some courts have held that the prohibition could encompass the federal courts too. *Baltimore & Ohio R. Co. v. Kepner, supra;*

*Wheeler v. Vimalert Co.,* 235 App.Div. 643, 255 N.Y.S. 114 (S.Ct.1932); *Poole v. Mississippi Publishers Corporation, supra.* We feel that, in these circumstances where the considerations in Donovan are accommodated, the district court could properly issue such an injunction to include all forums whether state or federal.

Since we hold that the district court was acting within its jurisdiction in granting the injunction, this is not a proper case for the invocation of the remedy of prohibition, therefore, we will quash this writ as being improvidently granted.

IT IS SO ORDERED.

SOSA, EASLEY and PAYNE, JJ., concur.