698 P.2d 462

**STATE of New Mexico, ex rel. Paul G. BARDACKE, Attorney General, Plaintiff-Appellee,**

v.

**George G. WELSH, Defendant-Appellant.**

**No. 7888.**

Court of Appeals of New Mexico.

March 26, 1985.

George G. Welsh, Albuquerque, pro se.

Paul G. Bardacke, Atty. Gen., Bruce Thompson, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

The trial court granted summary judgment. That judgment provides

that a permanent injunction is hereby issued restraining Mr. George G. Welsh directly or indirectly, personally or by any agent, from filing any civil or criminal action in any of the courts of the State of New Mexico or any political subdivision of New Mexico unless he is represented by an attorney at law[.]

The judgment provides an exception; the injunction does not apply if a district judge outside the Second Judicial District is aware of the injunction and issues an order allowing Welsh to file an action in a specific judicial district other than the Second Judicial District. Welsh appealed. We (1) state the background; (2) summarily dispose of certain issues; (3) decide the propriety of the injunction; and (4) decide whether the trial judge was disqualified from sitting in this case.

**BACKGROUND**

The complaint filed June 29, 1983, states:

1[.] This action is brought to protect the citizens and judicial officers of New Mexico from being sued in repeated unnecessary and vexatious lawsuits; to protect the citizens of New Mexico from having their courts unduly occupied by frivolous lawsuits to the exclusion of valid matters; to protect the courts from being burdened with frivolous lawsuits which impede the functioning of the courts; to protect the citizens, the courts and the State from the unnecessary expense of dealing with frivolous lawsuits.

2. The nature of this action is for injunctive relief against the Defendant to preclude him from filing additional lawsuits in any court of the State of New Mexico unless he is represented by a licensed member of the New Mexico Bar Association.

The complaint identifies a series of cases filed by Welsh, pro se, in the District Court of the Second Judicial District, between September 12, 1974, and May 31, 1983. The complaint then alleges:

30. Mr. Welsh has never been successful in prosecuting any of his pro se actions in New Mexico.

31. Mr. Welsh files numerous motions in his more recent lawsuits. These motions rarely have any discernible legal merit and serve only as a means for Mr. Welsh to complain about opposing counsel and the courts.

32. Mr. Welsh regularly files affidavits in his actions which are unrelated to any motion and serve no legal purpose. These affidavits frequently attack opposing counsel, opposing parties and the courts.

\* \* \* \* \* \*

34. State court judges, court employees, attorneys and public employees are the most common targets of Mr. Welsh's pro se complaints. Defendants in the pro se lawsuits filed by Mr. Welsh thus far include: state district court judges, state magistrate court judges, assistant district attorneys, private attorneys, court clerks, court reporters, municipal police officers, animal control officers and the Executive Director of the New Mexico State Bar Association.

35. The fact that judges previously sued by Mr. Welsh and other judges recuse themselves, combined with the fact that Mr. Welsh often files motions to disqualify remaining judges, makes it necessary to appoint district court judges from other judicial districts to hear Mr. Welsh's cases.

\* \* \* \* \* \*

37. Mr. Welsh's pro se lawsuits serve only to harass the individual defendants against whom they are filed.

38. Mr. Welsh's pro se lawsuits interfere with the functioning of the state court system and place a serious strain on the judicial resources of the State.

\* \* \* \* \* \*

40. Mr. Welsh's misuse of the judicial system has wasted court time making it more difficult for the courts to deal with legitimate legal actions in a timely manner.

41. If Mr. Welsh is not enjoined from filing further pro se civil actions in the courts of the State of New Mexico the people of the State, and the courts of the State will be irreparably injured by the further waste of court time, the time of parties, waste of other judicial resources and loss of access to the courts for legitimate legal actions.

The complaint was accompanied by a motion for a temporary restraining order. The motion was supported by the affidavits of the Bernalillo County District Court Clerk and the attorney for plaintiff.

The clerk's affidavit states that she is personally acquainted with Welsh. "Mr. Welsh as a matter of course files lawsuits against anyone who files a suit against Mr. Welsh." The attorney's affidavit states:

If a restraining order is not immediately issued \* \* \* the Defendant will in all likelihood file additional lawsuits. If the Defendant is given notice of this [motion for a] Restraining Order before it is issued he will in all likelihood file lawsuits before the matter can be heard. Such lawsuits will further burden the courts of this state and the parties sued.

Judge Brennan issued a temporary restraining order on June 29, 1983, which expired by its own terms prior to any hearing. *See* NMSA 1978, Civ.P.R. 66(b) (Repl. Pamp.1980).

On July 1, 1983, Welsh filed an affidavit disqualifying Judge Brennan. The affidavit was honored. Thereafter, various judges were assigned to the case. Each assignment was followed by the recusal of the judge assigned, until the case was assigned to Judge Love on December 2, 1983. Eleven district judges recused. Only one judge stated a reason. There being no evidence to the contrary, we presume that each of the recusing judges did so in conformity with his or her duty to perform his

or her judicial role except where the judges' impartiality might be reasonably questioned. *Gerety v. Demers*, 92 N.M. 396, 589 P.2d 180 (1978).

Welsh filed several motions. We refer to these motions in discussing the propriety of the injunction. On July 7, 1983, Welsh filed a petition for removal of the case to federal court. Upon plaintiff's motion, the United States District Court remanded the matter to the Second Judicial District Court on August 12, 1983. We also refer to the petition, and accompanying affidavit, in discussing the propriety of the injunction.

Judge Love, who was assigned the case on December 2, 1983, denied Welsh's various motions without hearing on December 6, 1983, on the basis that no hearing was needed. *See Birdo v. Rodriguez*, 84 N.M. 207, 501 P.2d 195 (1972). Judge Love set a hearing for December 12, 1983, on the application in the complaint for a preliminary injunction. The hearing was held as scheduled and a preliminary injunction was filed December 21, 1983. This injunction is worded similarly to the permanent injunction quoted at the beginning of this opinion. The preliminary injunction provided that it was to continue in effect until further order of the court or final adjudication of the matter.

On February 14, 1984, plaintiff moved for summary judgment on the issue of a permanent injunction, relying on the record in the case and the exhibits admitted as evidence at the December 12, 1983, hearing. The motion sought a summary judgment to prevent "George Welsh's vexatious, harassing and oppressive lawsuits." This was the motion that was subsequently granted.

On February 24, 1984, an attorney entered an appearance for Welsh. The attorney represented Welsh through the filing of the skeleton transcript in this court, at which point this court permitted the attorney to withdraw. The attorney filed a response to the motion for summary judgment. Two of the allegations in the response raised the substantive issues to be decided in the appeal—the propriety of the

summary judgment and whether Judge Love was disqualified from sitting in the case. The response was supported by an affidavit of Welsh which contained various comments as to why Judge Love should not sit. The attorney also moved to quash the preliminary injunction and moved to disqualify Judge Love for cause. Both motions were denied and the motion for summary judgment was granted.

## SUMMARY DISPOSITION

■ Welsh's appellate brief makes assertions concerning laches, tampering with evidence, secret court sessions, lack of access to the record, and criminal conspiracy. At a minimum, it alleges collusion between District Judge Jack Love and Metropolitan Court Judge Elizabeth Love. It attacks the attorney who represented Welsh in connection with the summary judgment proceedings. To the extent that these comments seek to raise appellate issues, they are not proper. They were either not raised in the trial court or lack support in the appellate record. NMSA 1978, Civ. App.R. 11 (Repl.Pamp.1984); *State v. Duran*, 91 N.M. 756, 581 P.2d 19 (1978).

## PROPRIETY OF THE INJUNCTION

The attack on the propriety of the injunction has two parts: (1) the authority of a district court to grant the injunction; and (2) the sufficiency of the showing to grant an injunction by summary judgment.

### 1. Authority To Grant the Injunction

The injunction was to prevent "George Welsh's vexatious, harassing and oppressive lawsuits." The question is the district court's jurisdictional authority to issue the injunction. *See Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967).

In *General Atomic Co. v. Felter*, 90 N.M. 120, 560 P.2d 541 (1977), the district court had enjoined General Atomic Company from filing or prosecuting additional lawsuits against United Nuclear Corporation excepting lawsuits named in the injunction. *General Atomic Co.* states:

[O]nce a court has acquired jurisdiction over the parties and the subject matter, it may enjoin either party from instituting or proceeding with another action in the same state or in a sister state based upon the same facts and issues.

\* \* \* \* \* \*

The underlying issue before us is whether the district court may restrict the future acts of a party who is bringing vexatious and oppressive litigation in multiple jurisdictions for the purpose of harassment. Clearly, the party may be restrained from instituting future state actions \* \* \*.

*Id.* at 122, 124, 560 P.2d 541 (citations omitted). This holding was reversed insofar as it enjoined federal litigation. "[I]t is not within the power of state courts to bar litigants from filing and prosecuting *in personam* actions in the federal courts." *General Atomic Co. v. Felter,* 434 U.S. 12, 12, 98 S.Ct. 76, 76, 54 L.Ed.2d 199 (1977).

■■■ Under *General Atomic Co.* the district court had authority to enjoin future vexatious and oppressive litigation. The aspect of the issue not answered by *General Atomic Co.* is whether that authority extends to future vexatious and oppressive litigation when the plaintiff is the same but the defendants are different. We hold that the district court has such authority, that a permanent injunction does not unconstitutionally deprive Welsh of access to the courts, and that a less restrictive method of regulating access is not required when the facts show a pattern of conduct which is either vexatious, oppressive or for the purpose of harassment.

*People v. Spencer,* 185 Colo. 377, 524 P.2d 1084, 1086 (1974) states:

When such a multiplicity of suits is brought, of course, it is not only the individual litigants who suffer. The taxpayers, bound as they are to pay the costs of court administration, have an interest in insuring that meritless suits are not filed. This petitioner, in suing the district judge personally and then filing petitions to disqualify the judge, has caused other judges to be transfer-

red into the county to determine the validity of his limitless claims. This is not only a waste of money and judicial time, but also interferes with the dockets in the jurisdiction from which the transferred judges must come. Finally, and perhaps most importantly, the efficiency of the judicial system in the county and the rights of other litigants who seek their day in court suffer when the courts are crowded and beclouded with the matters of one party. In a proper case, then, the right of free access to our courts must yield to the rights of others and the efficient administration of justice.

*Eismann v. Miller,* 101 Idaho 692, 619 P.2d 1145 (1980), characterized Miller's conduct as a burden on the judicial machinery with repetitive lawsuits, hampering and discrediting personal and professional lives of many, and expense to the taxpayers for substitute judges. "At both state and county levels valuable time and resources have been spent to defend public officials against the vast litigation spawned by this one individual." *Id.* 619 P.2d at 1150. *Eismann* states:

We do not fail to recognize that every individual in our society has a right of access to the courts. *See, e.g., Board of County Comm'rs v. Barday,* [197 Colo. 519], 594 P.2d 1057, 1059 (1979); *People v. Spencer, supra* 524 P.2d at 1086. However, the exercise of that right cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process. To allow one individual ... to incessantly seek a forum for his views both legal and secular by means of *pro se* litigation against virtually every public official or private citizen who disagrees with him only serves to debilitate the entire system of justice.

We emphasize that our order does not \* \* \* *deprive* the respondent of access to the courts of this state. What is restricted is the respondent's ability to hamstring the judicial system of this state with unapproved *pro se* filings and related matter, and with attempted "en-

forcement" of those efforts through certain unacceptable means.

*Id.* at 1150 (emphasis in original) (footnotes omitted). *See also Gordon v. United States Department of Justice,* 558 F.2d 618 (1st Cir.1977); *Roy v. Manchester Gas Co.,* 113 N.H. 140, 302 A.2d 825 (1973); *Muka v. Hancock, Estabrook, Ryan, Shove & Hust,* 120 Misc.2d 146, 465 N.Y. S.2d 416 (1983).

*Muka* recognized the difficulty of imposing sanctions on a nonlawyer and approved a permanent injunction, stating that an injunction is warranted when the courts are being used as a vehicle of harassment. In *People v. Dunlap,* 623 P.2d 408 (Colo. 1981), it was contended that counterclaims and suits seeking damages were "available alternatives and would be a less restrictive method of regulating the fundamental right of citizens to litigate their claims in the courts." *Id.* at 410. *Dunlap* states:

[I]f the respondents' abuse of the courts had been limited to matters of private and individual concern, then private and individual remedies would seem adequate to protect opposing litigants * * *. However, an injunction issued from this court is appropriate when the procedure followed by private litigants conflicts with important public rights and interests and when it resists other means of control.

*Id.* at 410 (citations omitted).

### 2. Sufficiency of the Showing

■ Some twenty-two exhibits were admitted as evidence. Welsh contends the exhibits were not the best evidence available to the state. Each of the exhibits is a copy of court records, certified to be true, correct and complete by the Bernalillo County District Court Clerk. The exhibits were properly admitted. NMSA 1978, Evid.R. 902(4) and 1005 (Repl.Pamp.1983).

Exhibit 1 was a suit against the chief clerk of the Bernalillo County Magistrate Court seeking damages on the grounds of "the negligence and inefficiency of the Clerks [sic] office" which allegedly resulted in plaintiff and his family being "swamped with barratrous and tumultuous litigation based upon suspicious and unfounded claims * * *." Defendant moved to dismiss on the basis of no duty to plaintiff and the failure of the complaint to allege any act resulting in any interference with plaintiff's rights. The complaint was dismissed with prejudice.

Exhibit 2 was a suit against a deputy clerk of the Bernalillo District Magistrate Court and C.D. Hill. The pleadings indicate that Hill, as agent for Southern Union Gas Co., sued Welsh in magistrate court in a dispute over unauthorized use of a gas meter. The suit alleged that Hill perjured himself in the Southern Union complaint, and that the deputy clerk aided and abetted Hill in collecting a suspicious claim. After a hearing at which there was a tender of evidence, Judge Baca granted the motion of both defendants for a dismissal with prejudice.

Exhibit 3 was a suit against Judge Marshall, then a magistrate, and against the executive director of the State Bar. The complaint indicates that Welsh was a defendant in a criminal libel prosecution, and that the libel involved the deputy clerk in Exhibit 2. Judge Marshall, who sat in the criminal libel action by designation, was sued for sitting as judge. The executive director was sued for alleged negligence in carrying out his duties as executive director. Welsh voluntarily dismissed this suit.

Exhibit 4 was a suit against Bolton Animal Hospital and Dr. Borthwick, a partner, which alleged that defendants permitted a child to observe Welsh's dog for the purpose of determining if it was Welsh's dog that had bitten the child. The trial court granted summary judgment for defendants. In Cause No. 3205, this court granted defendants' motion to affirm because Welsh had not docketed his appeal within the time provided by the appellate rules.

Exhibit 5 was a suit against Judge Baca. The complaint alleged that Welsh was appealing a magistrate court judgment that fined Welsh for violations of the Albuquerque Animal Control Ordinance. The com-

plaint sought damages from Judge Baca for failing to issue a writ of habeas corpus. The complaint alleged a copy of a petition for the writ of habeas corpus was attached to the complaint. There was nothing attached to the complaint. Judge Franchini dismissed the complaint on the basis that no petition for a writ of habeas corpus had ever been filed in the Bernalillo County District Court. After the dismissal, Welsh filed affidavits accusing the court clerk of fraud by sending notices of hearing by certified mail, return receipt requested; accusing the court clerk of distorting judicial records and tampering with evidence; asserting that Judge Baca has a monomania for persons who appear pro se and "bears watching"; asserting the case was still pending; and asserting that Judge Neal, designated to sit during Judge Franchini's illness, should be ordered to hear the case. Judge Neal had directed that certain material be sealed by the clerk. Welsh filed a copy of Judge Neal's letter "to show a propensity on the Clerk's part to commit deliberate acts of sabotage * * *." Welsh also filed a motion to "restore" his petition for a writ of habeas corpus, alleging that Justice Payne of the Supreme Court had a pecuniary interest in the case; that a document had been pilfered from *Welsh v. Marshall*, the Exhibit 3 case; that two named deputy clerks were involved in a cover-up; that he had been "disfranchized [sic]" of his right to vote in the 1976 Presidential Election and had been deprived of his right to serve on a jury.

Exhibit 6 was a suit against a physician for malpractice in treating a dog bite. See discussion of the Exhibit 4 case. The file shows the malpractice claim was without foundation in fact. The complaint is remarkable in that it asserted that Welsh was a third-party beneficiary of the physician's duty of care owed to the patient, apparently on the basis that plaintiff's wife administered first aid to the patient. The complaint also asserts that the physician failed to obey a subpoena and attend Welsh's trial on charges of violating the animal control ordinance. See discussion of Exhibit 5. The file shows the physician

was never served with a subpoena. The case was dismissed with prejudice.

Exhibit 7 was a suit against a school teacher for defamation and was dismissed because the complaint was defective in its pleading. The file contains Welsh's affidavit attacking the Albuquerque postmaster as a "sycophant," a politician and as being unfit to be a postmaster. Another affidavit alleges the district court clerk to be "an aborter of truth * * *."

Exhibit 8 was a complaint in "quo warranto" asserting that defendant Mescall was engaged in the private practice of law while serving as a judge. Mescall was an attorney for a party in the cases discussed in Exhibits 1, 2 and 3. Mescall counterclaimed for damages on the basis of harassment, asserting he was a temporary municipal judge and could engage in the private practice of law except in Albuquerque Municipal Court cases. The counterclaim asserted that Welsh's suit was designed to affect the consideration of Mescall for a permanent appointment. The complaint was dismissed for nonprosecution; no action has been taken on the counterclaim.

Exhibit 9 was a suit against Magistrate Short for allegedly aiding in the filing of suits and criminal prosecutions against Welsh. Defendant moved for a more definite statement but never obtained one. All we know about the allegations in the complaint comes from Welsh's attachments to his complaint. The attachments indicate that, in the case discussed under Exhibit 3, a jury had convicted Welsh of four counts of criminal libel, that Judge Marshall had imposed and then suspended sentence, and that the state, through an assistant district attorney, had moved that the remainder of the suspended sentence be revoked and that Welsh be incarcerated. Notice to Welsh to show cause was filed on December 9, 1977; Welsh filed his suit against Short on December 14, 1977. Short moved for disciplinary action against Welsh on June 4, 1978. An attorney entered an appearance for Welsh on June 21, and the

trial court dismissed the complaint against Short with prejudice on June 26, 1978.

We note that Welsh voluntarily dismissed the suit against Judge Marshall, discussed under Exhibit 3. Welsh's affidavit, contained in Exhibit 9, asserts that his dismissal of the Exhibit 3 case was coerced by three men wearing surgeon's gowns, masks and rubber gloves who threatened castration if he did not dismiss the Exhibit 3 case.

Exhibit 10 is a suit against Butler, Welsh's attorney in a divorce suit. Complainants are both Welsh and his wife. The suit is pending. This exhibit indicates that the Welshes reconciled on October 20, 1980 and stipulated to a dismissal. The suit against Butler was filed October 24, 1980. The exhibit shows Welsh accused Butler of being a drunkard and of being senile. The exhibit contains pleadings indicating Welsh sued then Magistrate, now Metropolitan Judge, O'Toole, apparently in connection with the *Southern Union Gas Co. v. Welsh* case, referred to in the discussion of Exhibit 2.

Exhibit 11 sought a writ of mandamus directed to Metropolitan Judge Short commanding Judge Short to reinstate Welsh's replevin action in the metropolitan court case of *Welsh v. Butler.* Butler was Welsh's former attorney, see discussion of Exhibit 10. The exhibit shows the metropolitan court case was tried by Judge Martinez, that Judge Short had recused himself. After trial, Judge Martinez's judgment dismissed the complaint on the merits. Judge Boucher, designated to try the mandamus action against Judge Short, dismissed the suit on the basis that the remedy of mandamus was not applicable. During the pendency of the mandamus action against Judge Short, Welsh filed affidavits accusing the Second Judicial District Court Administrator of gross insubordination, accusing attorney Butler of "pandering" Welsh's private papers and health records, and seeking to disqualify Judge Boucher, who had been designated by the supreme court. Welsh also filed motions 1) asserting that Judge Short had intimidated witnesses in the metropolitan court case decided by Judge Martinez; 2) asking that a grand jury be convened to inquire "into the jurisdictional excesses of the * * * Metropolitan Court for condoning, authorizing, and unlawfully permitting the practice of law by itinerant landlords representing foreign corporations"; 3) attacking Assistant District Attorney Henson for representing Judge Short and attacking District Attorney Schiff on the basis that Mr. Schiff was compounding a crime because he knew that members of his staff were engaged in the unauthorized practice of law; 4) asking for an injunction against Judge Short for "heckling, harassing, and distressing [Welsh] in the honest pursuit of justice"; 5) asking for compensation of $15,000 for Welsh's "numerous acts of public service at grave personal peril to himself" which public service "should have been done by public agents working for the State"; 6) asking for an award of liquidated damages to be paid by Henson and Schiff because "Henson is attempting to obtain hearings on Motions previously set for hearing but subsequently vacated"; and 7) asking for a "public service fee" of $5,000 "for having suffered humiliation and disgrace at the hands of Metropolitan Court officials * *."

Exhibit 12 was a suit against Williams, an attorney for St. Joseph Hospital, and Huppert, a vice president of the hospital. Welsh and his wife were the plaintiffs. The suit asserted plaintiffs had been libeled by a letter written by Williams in connection with Welsh's failure to appear for his deposition in the hospital's suit against Welsh. The letter stated that Williams was filing a motion to impose sanctions against Welsh for his nonappearance. A copy of the letter was sent to Huppert. Upon a showing that Huppert's only involvement was to receive a copy of Williams' letter, the trial court granted summary judgment in favor of Huppert. Upon a showing that the complaint, as a matter of law, did not allege libel, the trial court granted a judgment on the pleadings in favor of Williams. We refer to this exhibit

in more detail in discussing the propriety of Judge Love sitting in the injunction case.

Exhibit 13 was an appeal based on a metropolitan court suit in which the Welshes sought damages from Sheffield, d/b/a Jiffy Maintenance Co., on the basis that defendant's agents had damaged the Welshes' fence. The suit was dismissed because at the time of the appeal there was no metropolitan court judgment to be appealed. We refer to this exhibit in discussing the propriety of Judge Love sitting in the injunction case.

Exhibit 14 was a petition for a writ of mandamus seeking to compel Metropolitan Judge Mandel to rule on a motion for summary judgment allegedly filed by Welsh in the metropolitan court case of *Welsh v. Bank of New Mexico*. Judge Cosgrove was the metropolitan judge assigned to the case until he recused on August 27, 1981. Judge Mandel was assigned the case on August 27, and recused on August 31, 1981. Judge Love dismissed the petition on the merits on the basis that a ruling on the motion for summary judgment was not subject to control by mandamus. Welsh's appeal to the supreme court was dismissed under NMSA 1978, Civ.App. Rule 31 (Repl. Pamp.1984).

Exhibit 15 was a declaratory judgment suit filed by the Welshes against the Bernalillo County Metropolitan Court. The original complaint indicates the issue involved the Welshes' attempted disqualification of a metropolitan court judge. However, subsequent pleadings allege that the metropolitan court refused to accept for filing the Welshes' complaint against attorney Williams, see discussion of Exhibit 12. The refused complaint sought damages from Williams on the basis that he refused to file an order dismissing the Welshes' counterclaim against the hospital. The metropolitan court counterclaimed seeking an injunction prohibiting the Welshes from appearing before any court in New Mexico without representation by counsel. The suit is pending. We refer to this exhibit subsequently.

Exhibit 16 shows a suit by the Welshes against the Bank of New Mexico in the metropolitan court. The Welshes claimed the bank had refused to refund insurance premiums. The bank asserted it had refunded the premiums and counterclaimed for "malicious harassment." The Welshes disqualified Metropolitan Court Judge O'Toole. All other metropolitan court judges recused. The case was then transferred to the district court. All district court judges recused, except Judge Love. Welsh's affidavit attempting to disqualify Judge Love bears the notation "Not Processed—Not Timely Filed." The case is pending.

Exhibit 17 was a suit against St. Joseph Hospital based on the hospital's prior suit against Welsh, see discussion of Exhibit 12. The complaint recognizes that Welsh's defense of payment was rejected in the prior suit. The complaint alleged that the prior suit was a second collection of Welsh's account with the hospital, that the account had been satisfied by Welsh's S.S.I. coverage, and the failure to recognize that the account had been satisfied deprived Welsh of due process. Allegations not pertinent to the due process claim are made against the hospital, and Williams, the hospital's attorney, is alleged to have committed fraud. All Second Judicial District Judges recused, except Judge Love. Welsh disqualified Judge Love. The supreme court designated Judge Angel. Welsh then objected to the "jurisdiction" of Judge Angel, alleging that the recusing Second Judicial District Judges colluded with Judge Angel to get Judge Angel an expense-paid trip to Albuquerque. Welsh alleged that evidence of the "recusal caper" had been given to the district attorney, and the district attorney was compounding a felony by not heeding Welsh's information. Judge Angel dismissed the suit for failure to state a claim.

Exhibit 18 was a suit against attorney Kirk, a partner of attorney Williams, based on the deposition taken from Welsh in aid of execution, and appears to pertain to the judgment the hospital obtained against Welsh. See discussion of Exhibits 12 and 17. All Second Judicial District Judges re-

cused, except Judge Love. Judge Love dismissed Counts II and III of the complaint for failure to state a claim. Defendant's motion for summary judgment as to Count I is pending.

Exhibit 19 was Welsh's suit against Judge Love and will be discussed subsequently. Exhibit 22 pertains to the suit enjoining Welsh from filing certain pro se pleadings for a six-month period which ended on March 10, 1983. Exhibit 22 will be discussed subsequently.

Exhibit 20 was a suit against Police Sergeant Tradup filed on March 18, 1983, eight days after the six-month injunction expired. The complaint alleged assault and battery, false arrest, false imprisonment and conversion of personal property. The answer alleges that Welsh was in the police station shouting at officers and that, when restrained, concealed weapons were discovered. All Second Judicial District Judges recused. The supreme court assigned the case to Judge DePauli. The case is pending.

Exhibit 21 was a suit against an assistant district attorney, Terry Vincent Yu, who had filed a motion in a metropolitan court case, in which Welsh was the defendant, seeking a determination of Welsh's competency to stand trial. Welsh's complaint alleged that Yu was using a man's name to obscure "her true female identity" to Welsh's damage. The exhibit shows a scheduled hearing on the motion to determine Welsh's competency before Judge Flores. Welsh's complaint asserts "[f]ilthy courtroom conditions * * * and judges visiting from other venues are compelled to wade ankle deep through garbage * * *." On the same day the complaint was filed, Welsh moved for a mental examination of Yu on the basis that she "suffers from delusions of persecution and is masquerading as a man * * *." Welsh also moved for a preliminary injunction seeking to enjoin Yu from prosecuting the motion for a determination of Welsh's competency. The action is pending.

Welsh's motions in this injunction suit and his petition for removal to federal court are consistent with the contents of the exhibits. He complains of the hospital judgment, see discussion of Exhibits 12 and 17, as a medicare "rip-off" set up with the approval of then Attorney General, now United States Senator, Bingaman; that the current Attorney General, Bardacke, is attempting to suppress the fraud and that Bardacke should be required to post a $200,000 surety bond to protect Welsh against financial loss. He sought to join Sheffield, the defendant in Exhibit 13, as an indispensable party to this suit. He claims the district court clerk colluded with Williams, see Exhibit 12 discussion, to prevent an appeal of a false claim on open account. He attacks his former attorney, Butler. See Exhibit 10 discussion. He claims the disposition in the Exhibit 13 case is based on a false transcript. He claims Judge Love's six-month injunction, see our reference to Exhibit 22, was "double punishment for Petitioner's outspokenness against the United States for its use of chemical-biological weapons in the macabre extermination of millions of defenseless Chinese Communists by the U.S. Marine Corps in Korea in 1950–51 * * *." He criticizes Metropolitan Judge Barnhart and District Judge Flores. He states that the New Mexico Supreme Court "hallucinates" and "aggrandizes." He asserts that competent legal counsel "is a mirage in New Mexico * * *." He asserts that Attorney General Bardacke should be ordered to submit to a mental examination and that a guardian ad litem should be appointed for Bardacke.

█ Judges, whether district, metropolitan or magistrate, do not escape Welsh's venom. Nor do attorneys, court clerks, other judicial personnel, police officers, citizens or supreme court justices. The exhibits and the record in this case establish a patent pattern of filing vexatious, harassing and oppressive lawsuits. The exhibits and record also show that persons not demonstrably connected with a lawsuit—the postmaster, Senator Bingaman, District Attorney Schiff, for example—will be vilified by Welsh's pleadings. The uncontradicted

showing supports the permanent injunction.

## WHETHER JUDGE LOVE WAS DISQUALIFIED FROM SITTING

The exhibits show the recusals and the recusals show that Judge Love was the only Second Judicial District Judge who felt he could sit in this injunction suit. Commendably, Judge Love did sit. Welsh asserts Judge Love was disqualified. This claim is not based on any procedure for disqualifying a judge. *See* NMSA 1978, § 38–3–9; NMSA 1978, Civ.P.R. 88.1 (Cum. Supp.1984). Nor does this claim involve untimely disqualification on the basis of invoking the court's discretion before the issue of disqualification was raised. *See Smith v. Martinez*, 96 N.M. 440, 631 P.2d 1308 (1981).

█ Welsh contends it makes no difference that he delayed questioning Judge Love's qualifications to sit in this case until after the preliminary injunction had been issued. According to Welsh, Judge Love was disqualified from taking any action in this case because of "cause," and was prohibited from sitting on the basis of "cause." Welsh contends that he timely raised the issue of Judge Love's qualifications in opposition to the summary judgment motion which resulted in the permanent injunction, and that Judge Love was disqualified from issuing the permanent injunction. The state seems to assert that, by not raising the issue of Judge Love's qualifications until after the preliminary injunction was issued, Welsh waived any issue of Judge Love's qualifications to issue the permanent injunction. We decline to apply waiver to a disqualification claim clearly raised before entry of the judgment being appealed. *See Midwest Royalties, Inc. v. Simmons*, 61 N.M. 399, 301 P.2d 334 (1956); *Tharp v. Massengill*, 38 N.M. 58, 28 P.2d 502 (1933).

█ Welsh's claim involves N.M. Const. art. VI, § 18 which provides that no judge shall sit in any cause in which he has an interest. *State v. Scarborough*, 75 N.M. 702, 705, 410 P.2d 732 (1966), states:

"[T]hat an 'interest' necessary to disqualify a judge must be a present pecuniary interest in the result, or actual bias or prejudice, and not some indirect, remote, speculative, theoretical or possible interest." *Tharp v. Massengill* states: "The purpose of this provision in our Constitution is to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal." 38 N.M. at 70, 28 P.2d 502. To be disqualifying, the alleged bias and prejudice must stem from an extrajudicial source and must result in a decision on a bias other than what the judge learned from sitting in the particular case. "Stated another way, the bias must be personal, and not judicial." *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 248, 629 P.2d 231 (1980).

█ According to Welsh, the extrajudicial source in this case is the exhibits showing cases where Judge Love sat as the judge. The exhibits of cases in which Judge Love sat are extrajudicial sources in this case; however, those exhibits do not show that Judge Love's rulings in the exhibit cases were based on an extrajudicial source.

Exhibit 22 was a case entitled "In re Pleadings of George G. Welsh, pro se." On June 16, 1982, Judge Love issued an order directing Welsh to show cause why he should not be barred from filing pleadings in the district court for six months. On June 21, 1982, Welsh moved to quash the show cause order. On June 22, 1982, Welsh filed an affidavit of disqualification which Judge Love refused to honor, relying on Section 38–3–9. The propriety of this ruling is not an issue in this appeal, *see United Nuclear Corp. v. General Atomic Co.*, and Welsh did not appeal the decision in the Exhibit 22 case. On June 25, 1982, Welsh filed a counterclaim attacking his former counsel, see discussion of Exhibit 10, asserting the show cause order was a conspiracy to boycott Welsh in violation of various federal statutes, and that Welsh was entitled to special damages of $75, general damages of $125,000 for abuse of process, and punitive damages of $125,000.

On June 28, 1982, the state moved that the metropolitan court's counterclaim, see discussion in Exhibit 15, be consolidated with the show cause order. On June 29, 1982, Welsh filed "affirmative" defenses asserting Judge Love's handwritten orders were "illegible, irresponsible, and unfilable" and the handwritten orders were purposely illegible in order to "defy review by the Supreme Court * * *."

Continuing with Exhibit 22, on July 2, 1982, Welsh petitioned for removal of the case to the United States District Court. The petition was denied by a federal judge. The petition for removal alleged that Judge Love's show cause order was "a silly prejudicial prank aimed at aiding and abetting vexatious litigation against Petitioner and covering up acts of judicial incompetence," was a political plan to cut off Welsh's access to the courts, that Judge Love had deliberately refused to be disqualified, that Judge Love was encouraging a boycott by the New Mexico Bar, and that Welsh had "a property right to practice law" in New Mexico courts. On July 23, 1982, Welsh again filed a statutory affidavit of disqualification which was not processed. On July 26, 1982, Welsh moved for default judgment on his counterclaim.

Continuing with Exhibit 22, on August 27, 1982, notice of hearing was given for September 10, 1982. On August 31, 1982, Welsh sued Judge Love. This suit is Exhibit 19.

Exhibit 22 shows that on September 7, 1982, Welsh moved for an order requiring Judge Love "to be more definite and certain" as to the pleadings relied on in the show cause order. Welsh alleged the show cause order "is silly, sychophantic peacockery, and overacted sham dictated by delusions of grandeur * * *." On September 10, 1982, Welsh moved to dismiss the complaint on the basis that Judge Love failed to appear at the Law School on September 9 so that Welsh could inspect and copy documents. This motion asked for a $250,-000 judgment against the Second Judicial Districts and "the individual Fifteen Judicial Divisions * * *." On September 10, 1982, Judge Love judicially noticed files and records and found that the "pro se pleadings of George G. Welsh are impairing, impeding, delaying, and obstructing the orderly administration of justice." The order provided that pro se pleadings of Welsh were not to be accepted for filing in the Bernalillo County District Court except for cases in which Welsh was a defendant and except in the Exhibit 19 case. The order expired March 10, 1983.

Welsh's suit against Judge Love, Exhibit 19, specifically complains of a subpoena duces tecum issued to Welsh in connection with the disposition referred to in discussing Exhibit 18. Welsh complains generally about unfair and partial rulings and refers to copies of orders annexed to and incorporated within the complaint. The orders are copies of rulings by Judge Love in the cases identified as Exhibits 12, 13 and 15, and in *St. Joseph Hospital, Inc. v. Welsh*, which is referred to in the discussion of Exhibit 12. Sampling of the rulings follow. Motions by Welsh to compel Judge Love to recuse, to vacate a judgment, for imposition of sanctions, to dismiss, to quash service were denied. One ruling advised Welsh to file and serve affidavits in support of his motion for summary judgment. Another explained denial of a motion to strike an answer on the basis that inconsistent pleadings are permitted. Another explained denial of a motion for a default judgment on the basis that the particular defendant had never been served, and the court did not have jurisdiction over that defendant until that defendant filed an answer.

In Exhibit 19, Welsh moved that Judge Love be required to submit to a mental examination, at the state's expense, because Judge Love was "intellectually impaired and emotionally unfit to read and understand Plaintiff's Pro Se pleadings." Welsh's affidavit asserted that Judge Love was an incapacitated person who should have a guardian ad litem appointed during the pendency of the case. Judge Love's answer to the complaint asserted judicial immunity. Welsh moved to strike this de-

fense on the basis that it has no application in modern law, and asserted that Judge Love's raising of this defense supported his claim that a guardian ad litem should be appointed for Judge Love. In a separate reply, Welsh asserted that "mental insanity" restricts the immunity defense.

There is nothing in the exhibits which show an actual bias or prejudice against Welsh on the part of Judge Love.

■■■ Welsh also relies on a newspaper article in claiming that Judge Love was disqualified. The newspaper quotes Judge Love as saying, " 'there's a natural bias against a pro se pleading * * * so the inclination of the judge is to put more time and effort into it in order to be fair to that person.' " The article states, concerning the six-month prohibition of Exhibit 22, "The judge said Welsh was simply taking too much of his time, forcing him to read cases that not only were meritless, but 'scandalous.' " This article does not show bias or prejudice against Welsh on the part of Judge Love.

Welsh's claim that Judge Love was disqualified from hearing the motion seeking a permanent injunction, on the ground of "cause," is without merit. Welsh's reliance on NMSA 1978, Code of Judicial Conduct, Canon 3 (Repl.Pamp.1983), raises a separate issue. Canon 3(C)(1) states when a judge *should* disqualify himself. Canon 3(C)(2) states when a judge *shall* disqualify himself. The issue is the "should" disqualify provision. It is a narrow issue. If Judge Love should have disqualified himself, the cause would be remanded for a hearing before another judge on the issue of a permanent injunction. The preliminary injunction would continue in effect pending such a hearing.

Canon 3(C)(1) states: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned * * *." *United Nuclear Corp. v. General Atomic Co.,* after quoting the "should disqualify" provision, states: "This provision sets up an objective standard geared to the appearance of justice, and thus expands the instances in which a

judge should disqualify himself beyond those set out in [N.M. Const.] Article VI, § 18." 96 N.M. at 250, 629 P.2d 231. *Tharp v. Massengill,* which involved a judge sitting in a case in which the judge's son was an attorney in the case and the son had a contingent fee contract, was also concerned with the appearance of impropriety.

The state asserts the "should disqualify" provision should not be considered because of the "rule of necessity." *Eismann v. Miller* explains the rule: "[W]here disqualification results in an absence of judicial machinery capable of dealing with a matter, disqualification must yield to necessity." 619 P.2d at 1149. *See also United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). *Eismann* applied the rule, stating: "Application of the 'rule of necessity' is clearly called for here, where the respondent has stated that no judge in the state is capable of hearing his case and has manifested an intent to sue all those who try." 619 P.2d at 1149 (citations omitted). That is not the situation in this case.

■■■ Judicial machinery existed to deal with the matter. *See* NMSA 1978, Civ.P.R. 88 (Cum.Supp.1984). This record does not show that the machinery would not function. The exhibits show that several out of district judges sat, by designation, in the Second Judicial District suits—Neal, Marshall, Flores, Musgrove, Boucher—and disposed of the matter assigned. The rule of necessity does not apply in this case.

Returning to the "should disqualify" issue, what is the appearance of impropriety in this case? It is that Judge Love sat in this (permanent injunction) case when he was a defendant in a pending case. *United Nuclear Corp. v. General Atomic Co.* indicates the "should disqualify" issue, as does the "actual prejudice" issue, requires extrajudicial bias. The extrajudicial source for this claim is Exhibit 19.

■■■ *United Nuclear Corp. v. General Atomic Co.* also indicates the basis for judging the claim. Canon 3(C)(1) applies

when a judge's impartiality might reasonably be questioned. This means there must be a reasonable factual basis for doubting the judge's impartiality. The following cases are pertinent to our holding.

*State v. Stout,* 100 N.M. 472, 672 P.2d 645 (1983), involved a judge citing an attorney for indirect contempt and then deciding the indirect contempt charge. Certainly an appearance of impropriety is involved when a judge brings the charge and then decides it on the merits. However, *Stout* held that the judge was precluded from hearing the case only "when a judge has become so embroiled in the controversy that he cannot fairly and objectively hear the case, or when he or one of his staff will necessarily be a witness in the proceeding * * *." *Id.* at 475, 672 P.2d 645 (citations omitted).

*Aguilar v. Penasco Independent School District No. 6,* 100 N.M. 625, 674 P.2d 515 (1984), involved the question of the judge sitting to determine attorney fees in a worker's compensation case after being reversed on that issue on appeal. *Aguilar* noted that the trial judge did not indicate any "possible embroilment" until the end of the hearing on attorney fees, that there "was no suggestion that the judge had an unfavorable personal attitude toward [the defendant] School District," that the trial court's strong denunciation of the defendant for its trial tactics "merely underscores facts." *Id.* at 626–27, 674 P.2d 515. Although the appearance of impropriety was involved in authorizing a trial judge to set the attorney's fee for plaintiff after a strong denunciation of defendant, *Aguilar* relied on the facts.

In *State v. Mata,* 88 N.M. 560, 543 P.2d 1188 (Ct.App.1975), defendant claimed he was entitled to a new trial "because when defendant was tried, his former defense attorney was an employee of the district attorney's office which prosecuted the case." *Id.* at 560, 543 P.2d 1188. The issue was the appearance of impropriety. We held that the concern for an appearance of unfairness had been met because the trial court conducted an evidentiary hearing and found facts which were not challenged. After outlining the facts found by the trial court, we stated: "The appearance of unfairness is dissipated by the above facts." *Id.* at 561, 543 P.2d 1188.

In this case, the uncontradicted facts shown by the exhibits and the record, are that Welsh's suit against Judge Love is frivolous and vexatious. To the extent any credibility can be given to a Welsh affidavit, he stated that after Judge Love refused to honor his attempted disqualification of Judge Love in the Exhibit 22 case, "In order to enforce and protect my rights, or what I thought to be my rights, I filed a lawsuit naming Judge Love as the defendant [the Exhibit 19 case]."

The Exhibit 19 case does not provide a reasonable factual basis for doubting the judge's impartiality; rather, the Exhibit 19 case is of the same ilk as the cases supporting the permanent injunction.

The permanent injunction is affirmed. No costs are awarded.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.