GARCIA, Judge (dissenting). {30} I respectfully dissent in this case and view the issue very narrowly. Regents do not contest the position that the district court can properly impose compensatory sanctions against a governmental entity as part of its inherent authority. Nor do they appeal the award of the compensatory sanction imposed by the district court. Instead, Regents ask this Court to determine as a matter of first impression whether the district court has the right to exercise its inherent legal authority to impose a purely punitive sanction against a governmental entity for improper conduct during a legal proceeding. I disagree with the majority’s holding that such an inherent right exists. See Majority Opinion ¶¶ 14-26. {31} The majority labels the sanction imposed by the district court as a “non-compensatory monetary sanction,” Majority Opinion ¶¶ 1,11,22, 26, and rejects Regents’ position that the $100,000 sanction was purely punitive. Majority Opinion^ 20,23. Yet the majority also recognizes that the sanction was issued for the purpose of being “severe enough to put a stop to the practice” based upon “the misconduct at issue and the relative size and resources of the wrongdoers. . . . [The court must] do more than merely compensate the other party for their Tees and expenses incurred.” Majority Opinion ¶¶ 9-10. Where a sanction has no compensatory component and is issued exclusively for the purpose of punishment and deterrence, the sanction is the equivalent of a punitive damages award. SeeBaca, 1995-NMSC-033, ¶¶ 21-22. Here, the underlying case had settled, and Regents was separately sanctioned for the entire amount of Plaintiffs’ compensatory expenses associated with Sauder’s misconduct, including attorney fees, costs, and other related fees. Majority Opinion ¶ 9. Asa result and based upon the primary legal argument comparing the monetary sanction award against Regents to a punitive damage award against a governmental entity, the term “punitive sanction” is the appropriate term for the $100,000 sanction awarded in this case. {32} Regents limit their appeal to the punitive sanction awarded and the recognized immunity governmental entities have from punitive damages under Baca and Torrance County. Majority Opinion ¶¶ 15-16. The majority distinguishes the public policy grounds for this governmental immunity based upon a need for additional control over abuses that occur during the judicial process and the distinct legal concept for a jury award of damages versus misconduct during judicial proceedings. Majority Opinion ¶ 18. It then asserts that misconduct toward the court must be given greater weight than misconduct toward a party when punitive punishment of a governmental entity is a consideration. Id. {33} The majority correctly recognizes the competing public policy interests regarding the award of punitive damages against a governmental entity that were addressed in Torrance County. Majority Opinion ¶ 17. The need to protect public revenues and to prevent the injustice of punishing innocent taxpayers rather than the officials at fault must be balanced against the need to deter abuse of governmental power and to promote accountability among governmental officials. Id. However, the majority failed to address the competing public interests any further in its analysis. The majority instead continues its pirblic policy analysis by citing Baca to rely upon the district court’s authority to impose attorney fees as a sanction and justify tipping the public policy scales in favor of awarding punitive sanctions for the purpose of “control[ling] the parties and the litigation.” Majority Opinion ¶ 21. This effort to distinguish the public policy decision expressed by our Supreme Court in Baca and Torrance County is misplaced for two reasons. {34} First, the competing public policy concerns must be addressed directly in order to determine whether an actual need to impose punitive sanctions against a governmental entity is necessary for the district court to control the parties and cases in the courtroom. Compared to our juries, the district court already has significantnon-punitivepower and authority to control the parties and the litigation under its jurisdiction. Baca, 1995-NMSC-033, ¶ 11 (recognizing that district courts have inherent power “[t]o fíne for contempt, imprison for contumacy, enforce the observance of order” on “both litigants and attorneys,” and to impose a variety of sanctions “in order to regulate [its] docket, promote judicial efficiency, and deter frivolous filings” (internal quotation marks and citation omitted)); State ex rel. Schwartz v. Kennedy, 1995-NMSC-069, ¶ 41, 120 N.M. 619, 904 P.2d 1044 (suspending or revoking a license for noncompliance with the conditions governing its issuance was recognized as an appropriate regulatory sanction); United Nuclear Corp. v. Gen. Atomic Co., 1980-NMSC-094, ¶ 201, 96 N.M. 155, 629 P.2d 231 (permitting a district court to impose a variety of sanctions to command and enforce compliance with discovery orders); State v. Martinez, 1998-NMCA-022, ¶ 6, 124 N.M. 721, 954 P.2d 1198 (allowing the district court to impose a variety of sanctions on a defendant who fails to include a witness he or she intends to call at trial, “including granting a continuance, prohibiting the party from calling a witness not disclosed, or entering such other order as it deems appropriate under the circumstances”); Enriquez v. Cochran, 1998-NMCA-157, ¶¶ 18, 48, 126 N.M. 196, 967 P.2d. 1136 (affirming the striking of its affirmative defenses and imposing a specific duty of care on the Boys Scouts of America as a discovery sanction);Rhinehart v. Nowlin, 1990-NMCA-136, ¶ 28, 111 N.M. 319, 805 P.2d 88 (permitting the district court to hold a civil contempt proceeding “to coerce or force compliance with a court order, or in the alternative, [to] impose sanctions by way of compensating the aggrieved party and awarding that party his or her attorney fees and costs”); State ex rel. Bardacke v. Welsh, 1985-NMCA-028, ¶ 19, 102 N.M. 592, 698 P.2d 462 (explaining that the sanction of injunction “is warranted when the courts are being used as a vehicle of harassment”). {35} In a real sense, these examples illustrate that the existing sanction powers possessed by the courts are much broader than a jury’s power to deter an abuse of power or promote accountability among governmental officials. In this case, the $1,500 sanction imposed directly against Sauder is just one example of the latitude given to the court that is not available to a jury. However, the broader punitive sanction of $100,000 that is neither paid by Sauder nor capable of jeopardizing his public position or office would offer no further deterrent or other value to the public policy being implemented. Rather than punishing the public official who committed the wrongful act, it is simply borne by innocent taxpayers. The court, not the jury, already has broad power to issue effective compensatory sanctions in order to deter any abuse of power and promote accountability among governmental officials who appear in the courtroom. Themajority’sjustificationfor imposing an additional punitive sanction against the public weighs heavily against the argument that the courts, rather than juries, might need the additional authority to impose a purely punitive award in order to deter an abuse of power and promote accountability among governmental officials. {36} Second, the majority’s position presumes that the jury process is incapable of imposing punitive awards against a governmental entity in order to fulfill public policy goals but that the courts possess some higher degree of capacity or understanding when it comes to imposing punitive awards against the government. Such a presumption is erroneous. It undermines the jury component of our legal system, the unique legal element that is one of the most profound and respected aspects of our democratic society. See State v. Mann, 2000-NMCA-088, ¶ 84, 129 N.M. 600, 11 P.3d 564 (recognizing the profound democratic function played by juries in a criminal prosecution); First Nat’l Bank v. Nor-Am Agric. Prods., Inc., 1975-NMCA-052, ¶ 50, 88 N.M. 74, 537 P.2d 682 (recognizing juries as “the institution best suited to reflect the sense of fairness and the conflicting values of a democratic order”); see also Axelrod v. Phillips Acad., 74 F. Supp. 2d 106, 109 (D.C. Mass. 1999) (recognizing juries as “the foundation of our jurisprudence in a constitutional democracy”); Holland v. State, 587 So. 2d 848, 877 (Miss. 1991) (Hawkins, J., dissenting) (“Judgment as to what is a ‘just’ or ‘right’ decision can change with the times. Nothing, however, can match the comfort of having men and women of your own stature pass upon the merits of your case. The public at large in turn feels far more comfortable with a [twelve]-man jury verdict, whatever it is, than it would with the same result having been reached by some judge.”). {37} It is an unfortunate mistake to presume that judges and not juries possess the exclusive knowledge and ability to determine when a purely punitive award must be imposed on a governmental entity and then paid by innocent taxpayers from public revenues. I disagree with the majority view and believe the Supreme Court’s analysis in Baca directs otherwise. See 1995-NMSC-033, ¶¶ 21-25. TIMOTHY L. GARCIA, Judge