782 P.2d 385

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ron SWAFFORD, Defendant–Appellant.**

No. 10972.

Court of Appeals of New Mexico.

Aug. 15, 1989.

Hal Stratton, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, N.M., for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, N.M., for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals from his convictions for criminal sexual penetration in the third degree, incest, assault with intent to commit a violent felony (CSP in the third degree), and false imprisonment. On appeal defendant claims that the trial court erred in (1) suppressing evidence of the victim's prior sexual history; (2) refusing defendant's tendered instruction on simple assault; (3) denying defendant's motion for recusal; and (4) refusing to accept a plea and disposition agreement. Defendant also raises two additional issues pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), *cert. denied* 394 U.S. 965, 89 S.Ct. 1318, 22 L.Ed.2d 566 (1969). We find no basis for reversal in defendant's claims of error, and affirm the convictions and sentence.

## I. Suppression of Evidence

■ By way of an *in camera* hearing, defendant sought to introduce evidence of a past sexual encounter of victim and a third party during which victim allegedly affixed the ropes found on the bed to restrain the third party in the course of consensual sexual activity. The trial court ruled that any mention of the origin of the ropes would not be allowed, finding that such disclosure "would advance no legitimate claim or defense available to the Defendant, unnecessarily confuse the jury, inject a false issue into the case, unreasonably humiliate and embarrass [victim], and run directly counter to the policies sought to be furthered by [NMSA 1978, Section 30-9-16 and SCRA 1986, 11-413]." The trial court expressly concluded that the proffered evidence was not relevant to any material issue in this case; and, even if relevant, such relevance was marginal at best and any probative value it may have was outweighed by its prejudicial impact.

Defendant argues the trial court's suppression of the evidence and denial of his motion to elicit evidence of the victim's past sexual conduct pursuant to Evidence Rule 11-413 deprived him of due process, a fair trial, and the right to confront witnesses against him. He contends the proffered evidence was material, relevant, and that its probative value outweighed any prejudice to victim. Defendant submits that because he was not allowed to tell the jury that victim had affixed the ropes to the bed prior to the incident at issue and to elicit evidence of the victim's prior sexual conduct, then the jury was left with the "damaging misconception" that defendant had placed the ropes on the bed, and "is therefore a pervert" "who had prepared a 'bondage bed' in his own home[.]" Defendant claims that "the [proffered] evidence was necessary to dispel a damaging image of defendant left by silence on the issue." He submits the error was not harmless and requests a new trial at which he be permitted to "explain [the] damaging evidence."

We note that defendant testified at trial that he was interested in bondage sex; he also said he did not keep his interest a secret, and that other people did know about it. It seems that if, as defendant suggests, the jury was inclined to view defendant as a "pervert" based on the "unexplained" presence of the ropes found by police during the investigation, then the jury would likely have had the same "damaging image" of defendant based on his own trial testimony. Furthermore, because the critical issues at trial were whether defendant intentionally and forcibly restrained and criminally sexually penetrated victim, defendant's half-sister, against her will, we find no abuse of discretion in the trial court's determination that evidence concerning the origin of the ropes was not relevant, and even if marginally relevant, its prejudicial impact outweighed any probative value. *See State v. Boeglin*, 105 N.M. 247, 731 P.2d 943 (1987).

In determining whether the trial court abused its discretion in excluding evidence, an appellate court may consider the probative value of the item of evidence. *See State v. Schifani*, 92 N.M. 127, 584 P.2d 174 (Ct.App.1978). Defendant's proffered evidence concerning the origin of the ropes was collateral, at best, to the determination of whether defendant used the ropes to forcibly restrain victim and carry out the

events described by her. And, if defendant had been allowed to assert that victim affixed the ropes to the bed on a prior occasion of consensual activity with another man, then, as defendant phrases it, the jury may have thought of victim as a "pervert" who had prepared a "bondage bed."

"It is not the province of the jury to pass moral judgment on the victim, and the court should remove the temptation to do so wherever possible." *State v. Romero*, 94 N.M. 22, 26, 606 P.2d 1116, 1120 (Ct. App.1980). Because defendant consistently has denied tying victim to the bed and denied having intercourse with her, victim's past sexual conduct indicates nothing concerning any defense offered by defendant. *See generally State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct.App.1978) (past sexual conduct of victim irrelevant to defendant's defense that victim consented). We believe the proffered evidence had no probative value with respect to defendant's guilt or innocence of the charges against him and, therefore, would have been an unwarranted invasion into the private affairs of victim, contrary to the policy sought to be furthered by Section 30–9–16. *See State v. Romero*. The information defendant sought to present to the jury would have served only to provide an improper opportunity for the jury to pass moral judgment on victim. *See id.* In light of the above, we find no abuse of discretion in the trial court's decision to suppress the information concerning the origin of the ropes unless the state attempted to claim that defendant affixed the ropes to the bed.

We hold that the trial court was within its discretion in its suppression of this evidence, since it was irrelevant to defendant's culpability for the crimes charged, advanced no legitimate defense, excuse, or justification for the crimes charged, and were likely to inject false issues and confuse the jury. We find no basis for reversal in the trial court's determination that such information should be excluded because, even if some relevance is assumed, any probative value it may have had was outweighed by its prejudicial impact. *See State v. Boeglin*. Absent some showing by the defendant of evidence sufficient to raise an issue concerning the relevancy of the prior sexual conduct of the victim, questions concerning past sexual conduct are properly excluded. *State v. Herrera*. We also note that the trial court's decision to exclude the proffered evidence provided that if the information became relevant, then defendant could assert that he did not place the ropes on the bed without necessarily "delving into allegations of consensual sex between [victim] and another man on another occasion."

■ In accordance with the above, we further hold that suppression of the evidence did not deprive defendant of due process, a fair trial, or an opportunity to confront witnesses against him; notably, defendant has not otherwise asserted that he was deprived of an opportunity to fully cross-examine victim and other witnesses during the trial. *See generally State v. Herrera* (where trial court properly suppressed evidence concerning victim's past sexual conduct, there was no deprivation of due process and no denial of defendant's right to confront witnesses against him).

II. Refused Jury Instructions

■ Defendant's second issue claims the trial court erred in refusing his tendered jury instruction on the charge of simple assault as a lesser included offense of the charge of assault with intent to commit a violent felony. An instruction on a lesser included offense is only appropriate if there is evidence tending to establish the lesser offense and there is some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985).

In this case, defendant's testimony and victim's testimony conflict with respect to what occurred during the incident underlying this action. Defendant testified that he was checking on victim when she awoke and became violent; he said he then hit victim four or five times and did so only to get her to quit biting him. Defendant denied tying her to the bed and denied having intercourse with her. In contrast, victim

said that she awoke as defendant was tying one of her wrists with a rope and that a struggle ensued during which defendant hit her several times and she bit and scratched defendant; eventually, defendant managed to restrain her arms and legs with rope and committed the CSP.

Notwithstanding the conflicts in the testimony, the undisputed evidence before us on appeal is that the results of a rape kit, taken at the hospital where victim was taken by police, showed that Type B semen was in victim's vagina and on her underwear and shorts; it is also undisputed that the evidence showed defendant is a "Type B secretor," and that only 8% of the population is of that type. In addition, defendant testified at trial that from early afternoon the day before the incident until victim left defendant's residence following the incident, he and victim were alone together, drinking and talking; defendant's testimony did not indicate or suggest that he or victim left the residence, or that anyone came to the residence, at any time during that period of approximately 14 hours. Also, police photographs admitted at trial, and not at issue on appeal, showed rope burns on victim, and scratches, abrasions, and a bite mark on defendant. We note that defendant has not raised any challenges to the sufficiency of the evidence underlying his convictions.

Although defendant's testimony was evidence tending to establish the lesser offense of simple assault, *see State v. Fish*, the inquiry of whether defendant was entitled to have the jury instructed on that offense as a lesser included offense of assault with intent to commit a violent felony also requires a look at the second prong of *Fish*, i.e., whether there is some view of the evidence which could sustain a finding that the lesser offense was the highest degree of the crime committed. It is clear from *Fish* that an appellate court looks at more than just defendant's testimony in determining whether the two prong test is met so as to entitle a defendant to a lesser included offense instruction.

Our supreme court cases have indicated that a failure to instruct the jury on a lesser included offense is reversible error where there is some evidence tending to support the instruction and defendant has tendered an appropriate requested instruction. *See State v. Reynolds*, 98 N.M. 527, 650 P.2d 811 (1982); *State v. Benavidez*, 94 N.M. 706, 616 P.2d 419 (1980). However, as we will explain, *Reynolds* and *Benavidez* are sufficiently distinguishable so as to preclude their dispositions from controlling our disposition of this issue in the case at bar.

In *Reynolds*, defendant was convicted of first-degree murder and aggravated battery. Our supreme court reversed the murder conviction and remanded for a new trial on only the homicide charge due to a failure to instruct the jury, as defendant requested, on voluntary manslaughter as a lesser included offense. The court determined that from the evidence presented at trial, the jury could have found voluntary manslaughter, and that this option should have been presented to the jury. In *Benavidez*, defendant was charged only with first-degree murder, and convicted on that charge. The supreme court held that because the evidence presented could have sustained a conviction for voluntary manslaughter, it was reversible error for the trial court to have refused defendant's requested instruction on voluntary manslaughter.

In *Reynolds*, the erroneously refused instruction related to the greatest offense charged and on which defendant was convicted. In *Benavidez*, the defendant was charged only with first-degree murder and convicted in the absence of a lesser included offense instruction on voluntary manslaughter. In contrast, in the present case, defendant's allegation of error in the trial court's failure to give an instruction on simple assault as a lesser included offense of assault with intent to commit a violent felony does not relate to the greatest offense, or the only offense, for which defendant was found guilty. The jury here determined that defendant also committed the separate and greater offense of CSP, as well as false imprisonment and incest. Based on this distinction, in addition to the reasons that follow, we find that neither

*Reynolds* nor *Benavidez* requires reversal in the instant case for the trial court's failure to give defendant's requested instruction.

The United States Supreme Court has instructed that, in federal court, a "defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). *Keeble* was cited with approval by our supreme court in *State v. Boeglin*, 105 N.M. at 250, 731 P.2d at 946, regarding an issue involving lesser included offense instructions; our supreme court indicated that the law in New Mexico regarding when a lesser included offense instruction is appropriate is the same as in federal court. Additionally, Senior Justice Sosa, in a dissenting opinion in *State v. McCrary*, 100 N.M. 671, 677, 675 P.2d 120, 126 (1984), cited *Keeble* for the proposition that "an instruction on a lesser included offense must be given where the evidence would permit a jury to rationally find a defendant guilty only of that lesser offense." Notably, the majority opinion in *McCrary* did not hold otherwise, but instead ruled that the defendant had waived any error in the trial court's failure to give the state's requested instruction on second-degree murder as a lesser included offense by objecting to the state's tendered instruction.

█ Applying the above to the present case, we are persuaded that because the jury found defendant guilty of the separate and greater offense of CSP, and guilty of false imprisonment and incest, and in light of the undisputed evidence in this case as set out above, the jury could not rationally have found defendant guilty of only simple assault, and acquitted him of the greater assault charge, even if it had been given the option by the court's giving defendant's requested instruction; such a verdict would be inconsistent with the jury's determination that defendant was culpable on the other charges specified above. As a result, we do not believe that defendant was enti-tled to have the jury instructed on simple assault as a lesser included offense of assault with intent to commit a violent felony. *See State v. Boeglin* (citing with approval *Keeble v. United States* ).

### III. Trial Judge's Failure to Grant Recusal Motion

Defendant next asserts that he was deprived of due process and a fair trial because the trial judge did not recuse himself upon defendant's filing of a motion for recusal. Defendant quotes a particular comment made by the judge in support of the claim that the judge had a strong personal bias and as a basis for the assertion that there was a reasonable factual basis for doubting the judge's impartiality. Defendant also submits that the judge's refusal to accept a plea agreement, suppression of evidence, and imposition of the maximum sentence demonstrate that the judge was biased. Defendant cites SCRA 1986, 21–400 and *State ex rel. Bardacke v. Welsh*, 102 N.M. 592, 698 P.2d 462 (Ct.App. 1985), in support of his argument.

█ While defendant correctly argues that a judge should recuse himself in a proceeding in which he has a personal bias or prejudice, the comment and conduct of the judge relied upon by defendant do not establish such a bias or prejudice. In *Welsh*, this court looked for actual bias or prejudice against the party seeking the judge's disqualification in determining whether there was merit to the claim that the judge should have disqualified himself; the same standard applies in this case because defendant argues the judge should have recused himself.

In *Welsh*, the judge was quoted as saying "there's a natural bias against a pro se pleading[;]" Welsh was pro se. *Id.* at 605, 698 P.2d at 475. Also, the newspaper article involved in *Welsh* reported that the judge had said Welsh was taking too much of his time. This court found that the article did not show the judge was biased or prejudiced against Welsh. In this case, defendant relies upon, and quotes the following comment of the judge: "at the time when I took the plea [agreement] there

were red flags that popped up all over this courtroom * * * as counsel are well aware, defense counsel, how I feel about violent crimes once there's been a conviction, especially rape cases I have strong feelings about them * * * * " This comment of the judge merely refers, in a géneral way, to the judge's feelings about violent crimes once a conviction is obtained. The judge's comment does not even suggest that the judge had a personal bias or prejudice against defendant during the trial. Applying *Welsh* to the case at bar, we find no abuse of discretion in the trial court's denial of defendant's motion for recusal and, thus, no basis for reversal in this argument insofar as it relies upon the above quoted comment of the trial judge.

With respect to defendant's claim that the judge demonstrated his prejudice by not allowing admission of the proffered evidence discussed above, we find no merit in this argument in light of our holding that the suppression of the evidence was not an abuse of discretion. Furthermore, defendant has not claimed that the sentence imposed was illegal, and it is well settled that a claim of judicial bias cannot be based upon the imposition of the maximum legal sentence. *State v. Williams*, 105 N.M. 214, 730 P.2d 1196 (Ct.App.1986). Defendant's reliance on the judge's refusal of the plea and disposition agreement as a basis for asserting judicial bias is also the basis for his fourth issue, which claims error in the refusal of the plea agreement. For the reasons that follow, we find no abuse of discretion in the trial court's refusal to accept the tendered plea agreement.

## IV. Refusal of Plea and Disposition Agreement

 In asserting error in the court's refusal to accept the tendered plea agreement, defendant's brief argues that there was a possibility the agreement had been subverted in bad faith by the prosecutor. Defendant claims "there is a suggestion that the state subverted the plea agreement * * * * "

When the plea and disposition agreement was tendered to the trial court, the judge reserved ruling on it until he could consider a presentence report, information on treatment programs, and written statements from victim and her other brother, Martin Swafford, regarding their feelings and views on the proposed disposition. This was not improper; under SCRA 1986, 5–304(B), the trial judge has the discretion to defer its decision on whether to accept or reject a plea agreement "until there has been an opportunity to consider the presentence report."

Defense counsel at trial "raised the possibility that the victim and Martin Swafford had been misled by the prosecutor" because their written statements indicated they wanted defendant punished, rather than the deferred sentence and probation incorporated in the tendered plea agreement. It was suggested in the trial court that the prosecutor was trying to subvert the plea agreement by providing the court with letters from victim and her brother Martin to prejudice the court against defendant. This latter argument ignores the fact that the trial court expressly requested written statements from victim and Martin Swafford before he would decide whether to accept the plea agreement. Because the trial court requested written statements from victim and Martin Swafford, we find no basis for defendant's "suggestion" of subversion by the prosecutor providing the court with letters from them.

The fact that defense counsel raised a mere "possibility" or "suggestion" of bad faith by the prosecutor does not establish an abuse of discretion by the trial court in its refusal to accept the plea agreement, particularly in light of the prosecutor's response that there had been no attempt to influence the family members and no attempt to subvert any agreement. Considering the totality of the facts and circumstances relating to this claim of error, we find no abuse of discretion in the trial court's refusal of the plea agreement. *See State v. Holtry*, 97 N.M. 221, 638 P.2d 433 (Ct.App.1981) (trial judge has discretion to accept or reject plea and his ruling will not be disturbed on appeal absent an abuse of

discretion), and thus there is no merit in defendant's assertion that refusal of the plea agreement demonstrated judicial bias or prejudice.

## V. Claim of Prosecutorial Bias

 Continuing to rely upon the allegation of bad faith subversion of the plea agreement, defendant also contends that the district attorney's office should have disqualified itself because of personal bias and misconduct. Defendant submits that the failure of the district attorney's office to disqualify itself deprived defendant of due process and a fair trial. We disagree.

Our review is limited to the record presented on appeal. *State v. Kenneman,* 98 N.M. 794, 653 P.2d 170 (Ct.App.1982). Nothing in the record before us establishes that there was any misconduct by the district attorney's office, or any bias; the trial court made no such finding, and defense counsel's allegations of bias and misconduct are insufficient to support such a determination. *See State v. Roybal,* 107 N.M. 309, 756 P.2d 1204 (Ct.App.1988) (argument of counsel is not evidence to be considered by this court). We find there is no basis for reversal in the failure of the district attorney's office to disqualify itself from the prosecution of this case.

## VI. Due Process Claim

Defendant's final argument asserts that he was denied due process and a fair trial because Deputy John Mares perjured himself. We have been referred to no evidence, or finding of the trial court, in support of this claim nor to any portion of the transcript which may support it. *See State v. Reese,* 91 N.M. 76, 570 P.2d 614 (Ct.App. 1977) (absent reference to relevant portions of transcript, this court will not address issue). Moreover, in a prior pleading filed with this court, appellate counsel for defendant admitted that there was "no factual support for this argument" and noted that the issue was raised at defendant's insistence and submitted to this court pursuant to *Franklin.* We hold that this issue fails to support a reversal of defendant's convictions, and it does not establish that defendant was denied either due process or a fair trial.

## CONCLUSION

Based on all of the foregoing, defendant's convictions and sentence are affirmed.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.