808 P.2d 51

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Guadalupe BACHICHA,
Defendant–Appellant.**

No. 11865.

Court of Appeals of New Mexico.

Jan. 31, 1991.

Certiorari Denied March 12, 1991.

Hal Stratton, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Paul J. Kennedy, Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Judge.

Do defendant's convictions of aggravated assault with a deadly weapon constitute lesser included offenses of the greater offense of false imprisonment by use of a firearm that merge for the purposes of sentencing? We hold under the facts of this case that the jury could properly convict defendant of the offenses of false imprisonment upon his wife, sister-in-law, and brother-in-law, and the separate offenses of aggravated assault with a firearm upon the same victims, because there was separate evidence of multiple aggravated assaults upon each victim. The following opinion is substituted for the prior opinion of this court. We remand for resentencing, in accordance with the habitual offender sentencing statute, NMSA 1978, Section 31–18–17 (Repl.Pamp.1987).

The events which gave rise to the charges against defendant grew out of the breakup of his marriage. Defendant's estranged wife, Pauline, returned to the house where he was living in order to retrieve her belongings. She was accompanied by her brother, Fred Santillanes, and her sister, Kathy LaFrance. Defendant admitted them into the house. While defendant's wife was in the bedroom with her sister, packing her clothes, defendant produced a .22 caliber rifle and ordered his brother-in-law into the bedroom with the two women. When defendant and his brother-in-law entered the bedroom, defendant ordered all three victims, at gunpoint, to stand against the wall on the far side of the room.

Defendant's wife attempted to escape through a door leading to the outside. Defendant caught her by the hair and physically forced her to the floor while holding the rifle pointed at her head. When defendant's brother-in-law sought to move away from the wall to assist his sister, defendant directed the gun at him, ordered him back against the wall, and stated that if he did not move back he would be shot. Suddenly, defendant aimed the rifle at his sister-in-law and shot her. As defendant was re-

loading the rifle, the brother-in-law grabbed the barrel of the gun, and a struggle for the weapon ensued. During the struggle, defendant kept his finger on the trigger and attempted to point the rifle at his brother-in-law. The brother-in-law succeeded in wrestling the weapon away from defendant's control, and defendant fled the scene.

As a result of this incident, defendant was convicted, following a jury trial, of three counts of aggravated assault with a firearm, contrary to NMSA 1978, Sections 30–3–2 (Repl.Pamp.1984) and 31–18–16 (Repl.Pamp.1987); one count of aggravated battery with a firearm, contrary to NMSA 1978, Sections 30–3–5(C) (Repl.Pamp.1984) and 31–18–16; three counts of false imprisonment, contrary to NMSA 1978, Sections 30–4–3 (Repl.Pamp.1984) and 31–18–16; and one count of battery, a petty misdemeanor, contrary to NMSA 1978, Section 30–3–4 (Repl.Pamp.1984). Defendant was acquitted of three counts of assault with intent to kill with a firearm.

The trial court sentenced defendant to serve consecutive terms of imprisonment on each count, with the exception of the charges of aggravated assault and aggravated battery upon his sister-in-law; the latter counts were ordered to run concurrently, one with the other, but consecutive to the other counts. The court also ordered that Counts 1 through 8 run consecutively to the sentence imposed under the habitual offender sentencing statute.

ISSUE AS TO MERGER

Defendant argues that the trial court erred by not merging each of his convictions of aggravated assault upon the three victims with his three convictions of false imprisonment with a firearm. He also contends that the state failed to prove by separate evidence that he committed the offenses of aggravated assault as discrete acts, distinct from the charges of false imprisonment upon each victim. Defendant posits that the assaultive acts, consisting of threats or menacing conduct with a firearm, were the same acts which constituted the basis for the restraining or confining of each of the victims against his will. Defendant further argues that the pointing of the gun and the victims' confinement that resulted from the pointing of the rifle consisted of a single continuous act, and that without the coercive effect of assaulting the victims with the weapon he would not have been able to effectuate the offense of false imprisonment.

 We disagree with defendant's assertion that each of his convictions of aggravated assault with a deadly weapon against three victims merged into the offenses of false imprisonment. Merger does not occur when different evidence is required to prove the two offenses. *State v. Muise*, 103 N.M. 382, 707 P.2d 1192 (Ct.App.1985). *See also State v. Williams*, 105 N.M. 214, 730 P.2d 1196 (Ct.App.1986); *State v. Singleton*, 102 N.M. 66, 691 P.2d 67 (Ct.App.1984). As observed in *Muise:*

> To determine whether one offense "necessarily involves" another offense, the definitions of the two crimes are examined to determine whether the elements are the same. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct.App.1977). An included offense does not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the included offense. *State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983). However, this determination is not made in the abstract. "[W]e no longer consider the statutory offenses in a vacuum but instead regard the offenses in light of the facts before us." *State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074, 1077 (Ct.App.), *cert. denied*, 101 N.M. 11, 677 P.2d 624 (1984); *see also State v. DeMary*, 99 N.M. 177, 655 P.2d 1021 (1982).

*Muise*, 103 N.M. at 392, 707 P.2d at 1202.

Defendant contends that his conduct, resulting in his convictions of false imprisonment against each victim, constituted a single transaction or event as it related to each victim. Defendant concedes that the "same transaction" test is no longer applied to merger cases in New Mexico. *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975); *State v. Williams*. Although there

is evidence indicating that the false imprisonment of each of the victims was an ongoing offense, *see State v. Tsethlikai,* 109 N.M. 371, 785 P.2d 282 (Ct.App.1989), there is evidence from which the jury could properly find that defendant committed multiple acts of aggravated assault against each victim by specifically directing and redirecting the rifle at each of them, accompanied by verbal threats, while falsely imprisoning each of them. Thus, defendant's assaultive acts, under the record before us, did not constitute a single continuous offense of aggravated assault upon the three victims so as to merge into the offense of false imprisonment. *See State v. Williams* (where different evidence underlies the two offenses, merger is not required). *Cf. State v. Pedroncelli,* 100 N.M. 678, 675 P.2d 127 (1984) (trier of fact could determine whether successive takings constituted single or multiple offenses of larceny).

■ The doctrine of merger is an aspect of double jeopardy. *State v. Gammil,* 108 N.M. 208, 769 P.2d 1299 (Ct.App.1989). It involves a determination of whether more than one offense has occurred so as to preclude imposition of multiple punishment. *Id.* Our supreme court described the proper method for analysis "in the light of the evidence" in *DeMary,* holding that "the specific elements of [the crimes] ... must initially be construed in the light of the evidence." *Id.,* 99 N.M. at 179, 655 P.2d at 1023. As observed in *State v. Ellenberger,* 96 N.M. 287, 290, 629 P.2d 1216, 1219 (1981), resolution of a claim of double jeopardy "is primarily one of legislative intent." *See also State v. Edwards,* 102 N.M. 413, 415, 696 P.2d 1006, 1008 (Ct.App. 1984). "Multiple punishments run afoul of the double jeopardy clause only where the Legislature has not authorized multiple punishments." Whether one offense is necessarily involved in a greater offense is. not a "constitutional litmus [test], but [is] merely [an aid] for determining legislative intent." *Ellenberger,* 96 N.M. at 290, 629 P.2d at 1219.

■ The offense of aggravated assault requires proof that defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery. *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982); § 30–3–2. Proof of general criminal intent is also a necessary element of the offense of aggravated assault. *State v. Cruz,* 86 N.M. 455, 525 P.2d 382 (Ct.App.1974). *See also* SCRA 1986, 14–305. As observed in *State v. Ross,* 104 N.M. 23, 715 P.2d 471 (Ct.App.1986), under the included offense concept, a greater offense cannot be committed without also committing the lesser offense. *State v. Omar–Muhammad,* 102 N.M. 274, 694 P.2d 922 (1985).

■ The crime of false imprisonment requires proof that defendant restrained or confined the victim against his or her will, under circumstances where the defendant knew that he had no authority to restrain or confine the victim. *See State v. Clark,* 80 N.M. 340, 455 P.2d 844 (1969); § 30–4–3; *see also* SCRA 1986, 14–401; *State v. Swafford,* 109 N.M. 132, 782 P.2d 385 (Ct. App.1989).

■ The offense of aggravated assault can be perpetrated without confinement or restraint of the victim. § 30–3–2. Similarly, the offense of false imprisonment can be perpetrated without committing the crime of aggravated assault, such as where a defendant by trick or false representations confines or restrains a victim without the use of threats, menacing conduct or a weapon. § 30–4–3; R. 14–401. Conversely, the offense of false imprisonment may under other circumstances be effected by means of threats or use of a deadly weapon. *See State v. Corneau,* 109 N.M. 81, 781 P.2d 1159 (Ct.App.1989). Under the facts before us, even though we agree that defendant's acts of threatening each of the victims with a deadly weapon constituted the means by which his victims were restrained or confined against their will so as to cause the assault to merge into the crime of false imprisonment, the trial court did not err in refusing to merge defendant's convictions of aggravated as-

sault into the offenses of false imprisonment, because there was evidence of multiple acts of aggravated assault committed against each victim. *State v. Muise. See also State v. Williams.*

 Under the evidence herein, defendant's acts of specifically pointing the rifle at each of the victims on two or more separate instances, accompanied by verbal threats, constituted evidence from which the jury could properly determine that defendant committed the separate offenses of aggravated assault and false imprisonment against each victim. Moreover, the jury could find that defendant falsely imprisoned his victims at the beginning of the episode and thereafter committed additional independent aggravated assaults for which he could be separately punished.

In *State v. McGuire,* 110 N.M. 304, 795 P.2d 996 (1990), our supreme court recently considered an analogous argument to that advanced by defendant. In *McGuire,* defendant argued that the trial court erred in imposing consecutive sentences for kidnapping and criminal sexual penetration, asserting that the sentences violated state and federal constitutional prohibitions against double jeopardy and multiple punishments. The court held that criminal sexual penetration was not a lesser included offense of kidnapping under the facts of that case and:

> The issue on which the state and defendant differ is whether the state relied on identical facts to convict defendant of both offenses in this case. * * *
>
> * * * Defendant confuses the use of the same facts to prove *successive* offenses that depend on *separate* conduct with the use of the same facts to prove *concurrent* offenses that depend on the *same* conduct.

*Id.* at 308, 795 P.2d at 1000 (emphasis in original).

We conclude that separate evidence supports defendant's convictions on both the charges of false imprisonment and each of the three counts of aggravated assault, rebutting the claim of the merger.

 Defendant also argues that this court should not affirm because the jury was not instructed it had to find false imprisonment and aggravated assault based on separate evidence. Any error in this regard was waived by defendant's failure to request the instruction he claims should have been given. SCRA 1986, 5–608(D). There is no contention that the instructions on the elements of each crime were erroneous. *See State v. Southerland,* 100 N.M. 591, 673 P.2d 1324 (Ct.App.1983). Further, the record contains sufficient separate evidence to support defendant's convictions for each crime. Therefore, neither jurisdictional nor fundamental error is present. We therefore affirm as to these counts.

## SENTENCES AS HABITUAL CRIMINAL

In its answer brief, the state asserts that defendant was improperly sentenced under the habitual offender sentencing statute. The state argues that the trial court failed to follow the statute when it enhanced defendant's total sentence by one year, and that since it established that defendant had been previously convicted of a felony, the habitual offender statute required the court to enhance each of defendant's current felony sentences by one year. The state argues that the sentence as handed down was illegal, and therefore constituted jurisdictional error, which may be raised for the first time on appeal.

 Our appellate rules allow jurisdictional errors to be challenged for the first time on appeal. SCRA 1986, 12–216. This court has held that a convicted defendant may challenge the legality of his sentence for the first time on appeal, because the trial court has no jurisdiction to impose an illegal sentence. *State v. Crespin,* 96 N.M. 640, 633 P.2d 1238 (Ct.App.1981). We believe that it makes no difference that in this case it is the state which challenges an illegal sentence. We point out, however, that although Rule 12–216 permits appellate review of this issue, it does not negate the requirement that the aggrieved party follow the procedures set out in SCRA 1986, 12–202, requiring the filing of a

cross-appeal. For the purpose of judicial economy and to avoid the necessity for an additional appeal, we address the state's claim of error in sentencing.

 The provisions of the habitual offender sentencing statute are mandatory. *State v. Davis,* 104 N.M. 229, 719 P.2d 807 (1986). Because the trial court found that defendant had one previous felony conviction, it was required to enhance each of his current felony convictions by one year. *State v. Harris,* 101 N.M. 12, 677 P.2d 625 (Ct.App.1984). We note that the trial court may, in its discretion, order enhanced sentences to be served concurrently when the underlying sentences are concurrent. *State v. Mayberry,* 97 N.M. 760, 763, 643 P.2d 629, 632 (Ct.App.1982). However, under *Mayberry,* the basic sentence and any enhancement are one sentence.

## CONCLUSION

Defendant's convictions are affirmed. The case is remanded for resentencing consistent with the habitual offender sentencing statute.

IT IS SO ORDERED.

ALARID, C.J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I concur in the result. I do not concur in the discussion of merger, because I fear that in our pursuit of a fact-based analysis of merger in each specific case, we have lost sight of our moorings.

Our task is no more than inferring legislative intent. If the legislature has authorized cumulative punishment, our inquiry is at an end. *See Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Somehow, our recent decisions have implicitly adopted a conclusive presumption that the legislature would not want to permit cumulative punishment if, under the facts of the case, one act violated two different criminal statutes. We have adopted the presumption without articulating any justification for it. In particular, we have failed to explain why we should reject the *Blockburger* presumption that has guided the United States Supreme Court over the years. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

In *Blockburger* a sale of one package of illicit drugs violated two statutes. One prohibited the sale of the drug except in or from the original stamped package; the other prohibited the sale of the drug not in pursuance of a written order from the purchaser. The Court upheld consecutive sentences for the two violations. The Court wrote:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. In other words, if each statutory offense requires proof of an element that the other does not, cumulative punishment is permissible.

*Blockburger* was reaffirmed in *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). Then, in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) the Court upheld convictions for both conspiracy to import marijuana and conspiracy to distribute marijuana, even assuming there was but one isolated conspiratorial agreement with dual objectives (importation and distribution).

In neither *Blockburger* nor *Albernaz* did the Supreme Court concern itself with the specifics of the case. The analysis was based solely on the statutory provisions. That approach was modified somewhat in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The defendant in that case had been convicted of both rape and felony murder. The felony-murder statute sets forth several alternative means of committing the crime. The one charged in the indictment against the defendant was murder in the course of commission of a rape. The Supreme Court, pointing out that the alternative means of

committing felony murder could have been set forth in separate statutes, stated that it was appropriate to look at the indictment to determine which of the alternative means of committing felony murder was charged against the defendant. (The Court explicitly noted that it was not looking at the facts alleged in the indictment. *Id.* at 694 n. 8, 100 S.Ct. at 1439 n. 8). The Court then observed that all of the elements of rape were included in the offense of killing in the course of a rape, and held that cumulative punishment was improper. (Interestingly our supreme court reached the opposite result in *State v. Stephens,* 93 N.M. 458, 601 P.2d 428 (1979). *See State v. McGuire,* 110 N.M. 304, 795 P.2d 996 (1990) (permitting cumulative punishment for compound offense and the predicate offense); *State v. Tsethlikai,* 109 N.M. 371, 785 P.2d 282 (Ct.App.1989) (same).)

The rationale of the *Blockburger* test is that the existence in each statute of an element not required in the other manifests a legislative "intention to serve two different interests in enacting the two statutes." *Whalen v. United States,* 445 U.S. at 714, 100 S.Ct. at 1449 (Rehnquist, J., dissenting). *See State v. McGuire* (considering whether two criminal statutes address different social norms); *State v. Tsethlikai* (same); *People v. Robideau,* 419 Mich. 458, 355 N.W.2d 592 (1984) (same).

It seems to me that once an examination of the elements of two statutory offenses shows that the statutes were intended to serve two different interests—that is, to penalize two distinct evils—our inquiry should end. There should be no further need to examine the facts of the case. Moreover, we should be careful not to characterize too broadly the "interest" served by a statute. *Albernaz* permitted cumulative punishment for conspiracy to import marijuana and conspiracy to distribute marijuana. The distinct interests served by the two statutes are prohibition against *importation* of marijuana and prohibition against *distribution* of marijuana. *See id.,* 450 U.S. at 343, 101 S.Ct. at 1144. It would be inappropriate to characterize both statutes as having as the single interest the protection of the public from marijuana.

If decisions of the New Mexico Supreme Court compelled us to adopt a test different from that of the United States Supreme Court, I would not concern myself with the *Blockburger* line of cases. As the citations in the majority's opinion show, however, the New Mexico cases adopting a fact-based analysis of merger questions are cases from this court. Our supreme court has not directly confronted the propriety of the fact-based approach to merger. *Cf. State v. Martinez,* 77 N.M. 745, 427 P.2d 260 (1967) (apparently adopting *Blockburger* test); *State v. McGuire,* 110 N.M. at 308, 795 P.2d at 1000 ("when the facts used to establish the elements of each offense are identical, imposition of multiple punishment for violation of the kidnapping and criminal sexual penetration statutes is *problematic* under existing case law [citing cases from this court]"; emphasis added). One should be cautious about incorporating doctrine from related, but different, areas of the law. *State v. Tsethlikai,* 109 N.M. at 373, 785 P.2d at 284. For example, *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982) was not a merger case; it concerned the propriety of a lesser-included-offense instruction, which in the context of that case raised questions of notice more than punishment. Similarly, decisions regarding the propriety of successive prosecutions apply principles distinct from those governing merger of offenses. *See Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

Turning to this case, the interests served by the false-imprisonment and assault statutes are not the same. The former protects freedom of movement. The latter protects against threats of physical harm. A fact-based inquiry may be necessary when there are multiple charges of assault and battery, *cf. State v. DeMary* (considering appropriateness of lesser-included-offense instruction for aggravated assault when defendant charged with aggravated battery), but that is not the situation here. I think it appropriate to presume that when a false imprisonment is accomplished through an assault, the legislature would approve cumulative punishment under the

two statutes because they serve distinct interests. *Cf. State v. McGuire* (statutes address different social norms); *State v. Tsethlikai* (same). Certainly the jurisprudence of the United States Supreme Court supports such a presumption.

I realize that this approach would change New Mexico law. But that law has been created by this court, not our supreme court. We should not perpetuate our own error. For example, the result in *State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct.App. 1985) (vacating sentence for dangerous use of explosives because conviction of aggravated burglary was established upon almost identical facts) is an aberration and the decision should be overruled.