This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                   **NO. 28,448**

**MAURICE MILLER,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Frank K. Wilson, District Judge**

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VIGIL, Judge.**

Defendant appeals his convictions after a bench trial for five counts of criminal sexual penetration in the third degree contrary to NMSA 1978, Section 30-9-11(E) (2003) (amended 2009). After considering each issue Defendant raises, we affirm Defendant's convictions.

**EXPERT TESTIMONY**

Defendant argues, pursuant to *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993), that the trial court failed to conduct a reliability and validity determination with respect to (1) the Sexual Assault Nurse Examiner's (SANE) testimony that Victim's vaginal injuries could not have been caused by consensual sex and (2) expert testimony from both the SANE practitioner and a therapist regarding "critical incident amnesia." Defendant also argues the SANE practitioner was unqualified to testify about "critical incident amnesia." We review the admission or exclusion of evidence for abuse of discretion. *Alberico*, 116 N.M. at 169, 861 P.2d at 205. Improperly admitted evidence will not result in a reversal if the error was harmless. *See, e.g., State v. Torrez*, 2009-NMSC-029, ¶ 33, 146 N.M. 331, 210 P.3d 228 ("To determine whether a non-constitutional error was harmless, we must assess whether there is no reasonable probability that the error affected the verdict.").

**SANE Practitioner's Testimony on Victim's Injuries**

A review of the transcript indicates that defense counsel (1) failed to object to the SANE practitioner's testimony regarding Victim's injuries on *Daubert/Alberico* grounds, and (2) solicited, on cross examination, the SANE practitioner's opinion that Victim's injuries were not consistent with consensual sex. On direct examination, the following exchange between the prosecutor and the SANE practitioner took place:

> [Prosecutor]: [W]hen you got onto the genital exam, did you note any injury in the genital area?
>
> [Witness]: Yes, I did.
>
> [Prosecutor]: Can you describe those, please?
>
> [Witness]: The hymen was swollen and red. And when I do a genital exam, I use swabs. I'm going to swab around that area. It was tender to touch in that area.
>
> [Defense]: Your honor, I object to this testimony. I don't feel she is qualified as an expert. We object. She is not an expert to be able to testify as to this.

Defense counsel's objection cannot be construed as an attack on the reliability or validity of the scientific or medical expertise on which the SANE practitioner's observation was based. Counsel did not properly preserve an objection on *Daubert*/*Alberico* grounds. *State v. Varela*, 1999-NMSC-045, ¶ 25,

3

128 N.M. 454, 993 P.2d 1280. Counsel's objection was based on qualifications, which if not properly established, would provide a reason for excluding the testimony. *See* Rule 11-702 NMRA (requiring expert witnesses to be qualified "by knowledge, skill, experience, training or education"). Further, the alleged error does not implicate concerns of plain or fundamental error which would permit this Court to review the issue despite a lack of preservation. *State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct. App. 1990) ("[W]e must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict.")

As for the objection on the record, the SANE practitioner described her qualifications as follows: she was a registered nurse, received specialized SANE practitioner training in Albuquerque, shadowed experienced SANE practitioners, performed genital exams, and continued to attend conferences and professional education. Conducting genital exams of alleged victims of sexual assault is precisely within her expertise. Thus, the trial court did not abuse its discretion when it allowed the SANE practitioner to testify about Victim's genital exam. *See* Rule 11-702.

Defendant alleges error in admitting the SANE practitioner's opinion, elicited on cross examination, that Victim's injuries could not have been caused by consensual sex. The relevant testimony is as follows:

> [Defense]: With consensual sex, there could be tears and redness and swelling, correct?

> [Witness]: The literature states that in consensual sex there isn't a lot of data that's been done in the research with consensual sex. The injuries that happen[] with consensual [sex] are mostly inside the vagina.

> . . . .

> [Defense]: There's not a lot of data you stated as to what can happen with consensual sex. So how do we have a basis for comparison of what's consensual or not? I mean there doesn't seem to be a good basis for comparison if we don't have data on what a consensual sex encounter looks like versus what a nonconsensual sex [encounter] looks like.

> [Witness]: According to the research and the literature, there is a lot of reference to the injuries that happen during sexual assault.

> [Prosecutor]: But these same types of injuries can happen from consensual sex?

> [Witness]: I can't answer to that.

The following then occurred during redirect examination by the State:

> [Prosecutor]: Let me ask you, you were asked about could there not be injuries during consensual sex.

[Witness]:     Yes.

[Prosecutor]:     Where do you normally see injuries and particularly to the posterior fourchette?

[Witness]:     Usually you'll see them between – we use the clock, the face of a clock to [locate] injuries. I didn't use that in my documentation. But in telling where you would normally see them, it would be at three o'clock down to six o'clock over to nine o'clock. This tear, I didn't document where it was, but it was right at six o'clock.

[Prosecutor]:     And is that sort of tearing related more to a consensual encounter or to blunt force nonconsensual?

[Witness]:     We learn in school that this is a common sexual assault injury.

The following exchange followed during re-cross examination by the defense:

[Defense]:     You cannot tell us with certainty just looking at that picture that that injury did not come from consensual sex?

[Witness]:     That's correct, I cannot. All I can tell you is what I see and what I document. I can't tell you what it comes from.

. . . .

[Defense]:     You're stating you can look at that now with medical certainty and tell me it is not possible that [the injuries] happened from consensual sex?

[Witness]:     Yeah.

. . . .

[Defense]: So when you said earlier that you couldn't look at that statement and – I mean you could not look at that picture and tell us that [the injuries] didn't come from consensual sex, are you now changing your position on that?

[Witness]: No. I'm still saying that these pictures to me depict that this was not consensual.

[Defense]: Yes, but the question was it's possible that [the injuries] could happen from consensual sex, correct?

[Witness]: I'm going to have to go by my learning.

We decline to find reversible error for evidence that Defendant himself solicited. *State v. Smith*, 92 N.M. 533, 540, 591 P.2d 664, 671 (1979) ("It is well settled that a defendant cannot be heard to complain on appeal that he was prejudiced by evidence which he introduced into the case."). Defense counsel's question on cross examination injected the topic of causation into evidence. Further, defense counsel was able to alert the fact finder that the SANE practitioner's opinion was based on her limited experience with sexual assault injuries, and not possible injuries from consensual sex. We therefore decline to find reversible error on this issue.

**"Critical Incident Amnesia" Testimony**

Defendant objected on different grounds at trial as to both of the State's experts when they testified on "critical incident amnesia." The SANE practitioner testified on direct examination as follows:

> [Prosecutor]: Well, you mentioned earlier that you have to take continuing professional education. In those classes do they give you information, and through your own study and experience, regarding critical incident amnesia?
>
> [Witness]: Yes.
>
> [Prosecutor]: What is that?
>
> [Witness]: That is when you're having a traumatic experience happen to you and you aren't thinking clearly. You're not thinking logically. You are focusing on something that –
>
> [Defense]: Again, I object to this. With my objection, I don't believe that she is qualified enough to testify to any types of medical conditions or psychiatric conditions or anything else that would cause someone to make the witness testify about changing stories or having any kind of psychiatric response.

Defendant's objection focused on the SANE practitioner's qualifications and ability to offer a specific opinion. The SANE practitioner's testimony was limited to a description of what she learned through her training and experience. The practitioner did not diagnose Victim or offer an opinion whether Victim displayed symptoms of "critical incident amnesia." The trial court was within its discretion when it allowed the SANE practitioner's testimony.

The State's second expert, the therapist, testified during direct examination as follows:

[Prosecutor]:    Are you familiar with trauma amnesia?  I believe you told me another name for it.

[Witness]:    The critical incident amnesia.

[Prosecutor]:    Critical incident amnesia, yes, ma'am.  Can you describe what you have learned about that through your training and experience?

[Witness]:    A lot of times victims of sexual abuse or any trauma, immediately following it, they don't have any –

[Defense]:    Your Honor, I object to this kind of testimony.  I don't think it's scientific.  I don't think that there's been any foundation laid.  Show me what type of scientific accuracy, degree of accuracy, reliability we have in determining some sort of diagnosis that we're talking about here.

[Court]:    Well, the current question – the present question that we can answer relates to what this witness has observed in clients with whom she has been counseling.  And so this is testimony about what she has observed and not diagnostic or scientific in that regard.  So I will allow the question as answered.  If we go where you're concerned about, then we'll deal with the objection at that time.

[Witness]:    Can you repeat –

[Prosecutor]:    Yes.  Can you describe what critical incident amnesia is?

[Witness]:    It's where they cannot remember all the details of what happened to them.  And sometimes it will come back

after a couple of nights of good sleep. Other times it will come back as memories when they smell something or they hear something that it triggers that memory.

[Prosecutor]:   In your practice, had you observed that in other victims of sexual assault?

[Witness]:   In most victims of sexual assault, yes.

[Prosecutor]:   And did you observe that in [Victim]?

[Witness]:   Yes.

[Defense]:   I'm going to object to that again.

The trial court then asked the witness to clarify the meaning of "that," after which the therapist testified that she observed symptoms of "critical incident amnesia" in Victim, but did not diagnose Victim with the syndrome. Defendant did not object to this response.

Defendant asserts that his objection required the trial court to conduct a reliability determination on "critical incident amnesia" before allowing the therapist to testify. We need not decide whether Defendant's objection was sufficient to alert the trial court that a *Daubert*/*Alberico* inquiry was required. As the State's brief points out, Defendant has not alleged any prejudice from the critical incident amnesia testimony. Without prejudice, there is no reversible error. *State v. Varela*, 1999-NMSC-045, ¶ 37, 128 N.M. 454, 993 P.2d 1280.

10

**MOTION FOR CONTINUANCE**

Defendant alleges error in the denial of his motion for a continuance. After the trial's first recess and the testimony of the SANE practitioner, defense counsel requested a continuance:

> [I]f this Court is going to put weight on that type of testimony that says 100% sure that I can tell you this came from force, we'd ask for continuance because we expect people to be honest. And that is a surprise to the Defense. There is no doctor that can come up to this Court and tell this Court that that 100% came from a forceful-type of incident. A pathologist can't even do that, Judge.

"The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). Defendant argues denial of the motion was an abuse of discretion because it prevented defense counsel from securing his own expert. However, at trial, Defendant did not request additional time specifically to secure a necessary expert witness, nor did Defendant make clear any other specific reason for the continuance. *Cf. State v. Torres*, 1999-NMSC-010, ¶¶ 9-18, 127 N.M. 20, 976 P.2d 20 (concluding denial of motion for continuance was an abuse of discretion where the defendant sought time to secure a witness whose testimony was essential to defense theory). Defendant did not articulate support for the motion by reference

11

to factors used by trial courts in determining whether to grant a continuance. *Id.* ¶ 10 (listing factors that a trial court should consider when evaluating a motion for a continuance: "the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion"). The trial court did not abuse its discretion when it denied Defendant's motion for a continuance.

**UNIT OF PROSECUTION / DOUBLE JEOPARDY**

Defendant argues that his five convictions for CSP violate the double jeopardy prohibition against "unit of prosecution" multiple punishments. *See, e.g., Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991) (describing unit of prosecution cases as those in which a "defendant has been charged with multiple violations of a single statute based on a single course of conduct"). We review claims of a double jeopardy violation de novo. *State v. Lopez*, 2008-NMCA-111, ¶ 8, 144 N.M. 705, 191 P.3d 563, *cert. denied*, 2008-NMCERT-007, 144 N.M. 594, 189 P.3d 1216.

The facts of the sexual assault presented at trial are as follows. Defendant drove Victim to a secluded location and began to advance upon her while she sat in the front passenger seat of the car. Defendant put his hands all over Victim despite her protests. He pulled the seat recliner lever, causing Victim to lay flat, and got on top of her. Defendant removed Victim's pants and penetrated her vagina with his penis. Defendant was dissatisfied with the location of Victim in the front passenger seat and told her to get into the back seat. While in the backseat of the vehicle, Defendant was unable to maintain an erection. He began to masturbate and then ordered Victim to perform oral sex on him. After penetrating her mouth with his penis, Defendant inserted his fingers into Victim's vagina and anus. Defendant regained his erection, penetrated Victim's vagina again with his penis, and continued until he ejaculated.

Defendant argues that the evidence does not support five separate counts of CSP. He contends that the evidence indicates that there was one continuous act of sexual conduct because the penetrations occurred over a very short period of time, in the same car, to the same victim, and with the same intent. We disagree.

We determine whether distinct criminal sexual penetrations have occurred during a continuous attack under the six-factor framework set forth in *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991).

13

(1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims (. . . multiple victims will likely give rise to multiple offenses).

*Id.* at 361, 805 P.2d at 628.

Four counts are readily affirmed. Defendant penetrated Victim's vagina and mouth with his penis. These two penetrations of separate orifices with the same object are sufficiently distinct. *Id.* at 362, 805 P.2d at 629 ("Except for penetrations of separate orifices with the same object, none of [the] factors alone is a panacea."). Similarly, the two digital penetrations of Victim's vagina and anus are sufficiently distinct because they also involved different orifices. *Id.* Under the *Herron* framework, Defendant's two penile penetrations of Victim's vagina are sufficiently distinct. Victim was repositioned between penetrations. Defendant lost his erection, masturbated, and penetrated other orifices between the two penile penetrations of Victim's vagina, which evidences the existence of intervening events. Also, time elapsed between Defendant's initial and subsequent penile penetration of Victim's vagina. We hold that the five criminal penetrations of

14

Victim were sufficiently distinct under *Herron* so as to avoid a double jeopardy violation.

**SUFFICIENCY OF EVIDENCE**

Defendant argues there was insufficient evidence of force or coercion for a conviction under Section 30-9-11(F). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Victim testified that after she told Defendant she did not want to have sex, Defendant put his hand on her mouth and told her "he was going to do what he wanted to do." Defendant reclined Victim's seat to make her flat and climbed on top of her, thereby physically restraining her. While Victim may have complied with Defendant's request to move into the backseat, Victim testified that she knew Defendant became violent when on drugs. It is reasonable to infer that Defendant's conduct and words, coupled with Victim's state of mind concerning Defendant's violent proclivity, produced the requisite force or coercion. We hold that there was sufficient evidence to support the trial court finding of force or coercion.

**PRESENTENCE CREDIT**

15

Defendant argues he is entitled to presentence confinement credit pursuant to NMSA 1978, Section 31-20-12 (1977), beginning on the day of his arrest through sentencing. Defendant was arrested on the charges of this case on February 23, 2007. At the time, Defendant was in custody of the Department of Corrections in Lincoln County on a parole violation. The district court arraigned Defendant on February 26, 2007. The district court ordered that Defendant be returned to the Department of Corrections in Lincoln County immediately because he had previously been sentenced in Lincoln County. The district court set bond at $50,000. Defendant was then ordered to be transported on or before May 21, 2007, to the Otero County Detention Center because he was scheduled to be released from Lincoln County's custody at that time. The trial court awarded Defendant presentence credit for the period between his release from the custody of the Lincoln Department of Corrections on May 21, 2007 and his sentencing on February 12, 2008.

The State points out that the record does not reveal whether the trial court considered awarding presentence confinement credit prior to May 21, 2007, and without a developed record, Defendant's relief is to file a motion or petition under Rule 5-801 NMRA or Rule 5-802 NMRA. While a claim of an illegal sentence can be raised for the first time on appeal, *State v. Trujillo*, 2007-NMSC-017, ¶ 8,

16

141 N.M. 451, 157 P.3d 16, we agree with the State that the record before us is not sufficiently developed for meaningful appellate review. The record does not reflect whether Defendant's parole violation was related to the charges in this case. If it was, Defendant may be entitled to presentence confinement, especially in light of the bond set in this case. *See State v. Irvin*, 114 N.M. 597, 601, 844 P.2d 847, 851 (Ct. App. 1992) ("We hold that, under Section 31-20-12 and [*State v. ]Orona* [98 N.M. 668, 651 P.2d 1312 (Ct. App. 1982)], the trial court had discretion to award [the] defendant presentence confinement credit for that time spent in custody after his parole was revoked based on the [subsequent] charge for which he was ultimately sentenced in this case."). If Defendant's confinement was unrelated to the charges in this case, he may not be entitled to presentence confinement. *Orona*, 98 N.M. at 670, 651 P.2d at 1314 ("The actual confinement being unrelated to the [current] charge, the trial court was correct . . . in denying [the] defendant's motion for presentence confinement credit."). We are unable to properly apply the factors from *State v. Facteau*, 109 N.M. 748, 750, 790 P.2d 1029, 1031 (1990), without a sufficient record. *See State v. Romero*, 2002-NMCA-106, ¶¶ 10-13, 132 N.M. 745, 55 P.3d 441 (discussing the operation of the three *Facteau* factors).

We decline to rule on Defendant's claim without a complete record. *See State v. Kurley*, 114 N.M. 514, 518, 841 P.2d 562, 566 (Ct. App. 1992) ("It is [the]

defendant's burden to bring up a record sufficient for review of the issues he raises on appeal. When the record provided by [the] defendant is incomplete, this [C]ourt will presume that the absent portions of the record support the trial court's actions.") (citations omitted).

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant argues his trial counsel was ineffective. Because Defendant raises an ineffective assistance of counsel claim for the first time on appeal, he must establish a prima facie case in order for this Court to remand to the trial court for an evidentiary hearing. *State v. Aragon*, 2009-NMCA-102, ¶ 8, 147 N.M. 26, 216 P.3d 276. "A prima facie case is made out when: (1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *Id.* ¶ 8 (internal quotation marks and citation omitted). "The test for ineffective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent attorney." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384. We begin with the presumption that trial counsel is competent. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532.

Defendant argues that trial counsel was unprepared to effectively address the State's medical evidence by failing to do a number of things. Defendant first claims trial counsel was ineffective by failing to formally request a *Daubert/Alberico* hearing. Defendant cites to *State v. Schoonmaker*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105, in support of his argument. However, *Schoonmaker* does not stand for the proposition that failure to formally request a *Daubert/Alberico* hearing of the state's witness constitutes ineffective assistance of counsel. *See Schoonmaker*, 2008-NMSC-010, ¶¶ 31-34 (holding that a defendant's inability to consult expert witnesses to challenge the state's expert witnesses when expert testimony is the crux of the case is unreasonable). In addition, as discussed above, Defendant has failed to establish prejudice that occurred as a result of the expert testimony on "critical incident amnesia." Defendant's failure to establish prejudice as a result of his trial counsel's performance dooms his claim of ineffective assistance of counsel. *Boergadine*, 2005-NMCA-028, ¶ 33.

Defendant further argues his representation was deficient because trial counsel did not present a medical expert to support Defendant's theory of the case. The record does not reflect whether trial counsel consulted an expert of her own in preparation for trial. There may not have been an expert who would substantiate Defendant's theory that Victim's injuries could have been consistent with

19

consensual sex. *See State v. Hernandez*, 115 N.M. 6, 18, 846 P.2d 312, 324 (1993) (holding no ineffective assistance of counsel where the trial counsel did not employ a forensics expert because the defendant failed to show that the expert would have corroborated his theory).

Defendant argues defense counsel's failure to file a motion under New Mexico's rape shield law constitutes ineffective assistance of counsel. *See* NMSA 1978, § 30-9-16 (1993) (requiring counsel to submit a pretrial motion, in prosecutions for enumerated sexual crimes, if evidence of the victim's past sexual conduct will be proferred at trial). To prevail on his claim of ineffective assistance of counsel, Defendant must first demonstrate that had trial counsel made a motion under Section 30-9-16, the motion would have been granted. *Cf. State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992); *see State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct. App. 1990) ("A trial counsel is not incompetent for failing to make a motion when the record does not support the motion."). The subject of Victim's past sexual conduct arose during cross examination of Victim's current husband who was also Victim's boyfriend at the time of the assault:

> [Defense]: Did you see her the 25th, the day before this happened?
>
> [Witness]: No, I didn't.

[Defense]:        What about the day before?

[Witness]:        The day before, I did see her.  The day before we went out to Octoberfest.

[Defense]:        Did you ever stay the night at her house?

[Witness]:        Yes.

[Defense]:        Did you stay the night at [Victim's] the night of Octoberfest?

[Witness]:        Yes.

[Defense]:        Did y'all have sex that night?

The trial court sustained the State's objection to defense counsel's line of questioning based upon the Rape Shield Act.

The relevance of defense counsel's inquiry is unclear at best.  Defendant's theory of the case was that he and Victim had consensual sex in an apartment; not forced rape in a car.  Evidence of Victim's sexual conduct, if any, with her then boyfriend is marginally relevant, and a trial court would have been well within its discretion to exclude the evidence.  *See State v. Swafford*, 109 N.M. 132, 133-34, 782 P.2d 385, 386-87 (Ct. App. 1989) (holding that a trial court was within its discretion when it suppressed evidence of the victim's sexual activity).  Defendant fails to cite any authority for the proposition that a motion made by trial counsel below would have been granted.  Without demonstrating that a pretrial motion

would have been successful, Defendant's claim of ineffective assistance of counsel fails.

We also disagree with Defendant that because Officer Prudencio and James Hadi did not testify at trial, trial counsel's representation was deficient. Defendant claims that Officer Prudencio may have had testimony which would have impeached Victim's credibility, and trial counsel failed to properly subpoena the officer. Hadi, who was allegedly present during parts of the night's events in question, might have offered testimony "on what actually happened that night." The record does not indicate the reasons Officer Prudencio did not testify. As such, we cannot assume trial counsel failed to properly subpoena him. Additionally, without affirmative evidence, we will not speculate on the content of possible witnesses's testimony. Defendant has not demonstrated that the possible witnesses would have testified and would have had favorable testimony. *Hernandez*, 115 N.M. at 18, 846 P.2d at 324.

Defendant also asserts that trial counsel did not adequately cross examine Victim but there is no argument in his brief in chief to support this assertion. *See State v. Sandoval*, 88 N.M. 267, 270, 539 P.2d 1029, 1032 (Ct. App. 1975) (holding that claims of error mentioned in the brief neither argued nor supported by authority are considered abandoned).

Defendant has failed to establish a prima facie case of ineffective assistance of counsel.

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**LINDA M. VANZI, Judge**